[S. F. No. 2228. In Bank.—April 4, 1903.]

ARTHUR BARNES, Respondent, v. CHARLES J. BER-ENDES et al., Defendants; EMMA A. BERENDES, Appellant.

NUISANCE—OVERHANGING WALL—PREVENTION OF PERMANENT BUILDING —ERECTION OF TEMPORARY BUILDING—LOSS OF INTERMEDIATE PROFITS NOT ALLOWED.—In an action to abate a nuisance, consisting of the wall of a house overhanging the plaintiff's lot, so as to prevent the erection of a permanent building thereupon, damages for the loss of the profits of the plaintiff's business between the time of the laying of the foundations of the permanent building and the completion of a temporary building on the rear of the lot, in which his business was carried on, cannot be allowed, where it appears that plaintiff entered upon his business sooner, by reason

of the erection of the temporary structure, than he would have done if he had completed the permanent building, in the absence of any obstruction thereto.

ID.—OTHER ITEMS OF DAMAGE—MOTION TO STRIKE OUT.—Other items of damage, which the plaintiff was entitled to recover, it was proper for the court to refuse to strike from the complaint upon motion.

ID.—AMENDED AND SUPPLEMENTAL COMPLAINT—DISCRETION OF COURT—AMENDMENT OF ANSWER.—It was within the discretion of the court to permit the plaintiff to file an amended and supplemental complaint setting forth an additional item of damages, and to allow it to be filed at the trial, and to refuse to permit the defendant to file a proposed amendment to the answer to the amended and supplemental complaint after the close of the trial, so as to present a new issue.

ID.—COST OF TEMPORARY BUILDING—EXPENSE OF SETTING UP AND REMOVING MACHINERY.—It was proper to allow to plaintiff as damages for the nuisance the cost of the construction of the temporary building, and the expense of setting up the machinery therein, and of removing it therefrom into the permanent building, when completed.

ID.—LOSS OF PROSPECTIVE PROFITS—WRONGFUL INTERRUPTION OF BUSINESS—EVIDENCE.—The rule that the loss of prospective profits of a business is not ordinarily to be allowed as damages does not apply where, by the wrongful act of another, a person is interrupted in carrying on a business which is established; and, in such case, evidence of the profits he was actually making is admissible.

ID.—PREVENTION OF LOSS—RECOVERY OF EXPENSE.—It being the duty of the plaintiff to prevent the loss of profits, so far as practicable, and he having prevented such loss by the erection of the temporary building, he is entitled to recover as damages all items of expense incurred in such prevention, and caused by reason of the delay in the erection of the permanent building.

ID.—INCREASED PRICE OF LUMBER—EXPENSE FOR WATCHMEN.—It was proper to allow the plaintiff as damages the amount of increase in the price of lumber for the permanent building, owing to the delay in its erection, for which the defendant was responsible, and also the expense incurred in the necessary employment of watchmen to guard and protect the new building during such delay.

ID.—EVIDENCE—OCCASION FOR OBSTRUCTION.—Evidence that other houses were situated on the lots of adjoining owners, and that this occasioned the obstruction of defendant's building upon plaintiff's lot, is inadmissible. That fact cannot excuse the defendant for the obstruction of plaintiff's lot.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge.

CXXXIX. Cal.—3

The facts are stated in the opinion of the court rendered in Department and in Bank.

William J. Herrin, for Appellant.

Lent & Humphrey, for Respondent.

SHAW, J.—Upon a rehearing of this cause we adhere to the views expressed in the opinion rendered by the Department, on the subject of damages for loss of profits.

It is contended upon the present hearing that, even if it be conceded that the loss of profits between August 29th and September 27, 1898, would have occurred regardless of the obstruction caused by defendant's buildings, still it must be admitted that, when the obstruction is removed, the same cessation of plaintiff's business, and consequent loss of profits, must take place; and so, as the loss must inevitably occur at some time, the plaintiff is entitled to recover it now. To this the answer is, in the first place, that the complaint asks damages for loss of profits between the two specific dates above mentioned, and upon such a pleading judgment could scarcely be given for a loss which is to occur at some future time not mentioned in the pleadings; in the second place, that it is not at all certain that the loss will ever occur—something may happen to prevent it; and, in the third place, that, if the interruption to the business of plaintiff does hereafter occur, it cannot be assumed that the profits at that time will be the same as at the time in 1898, to which all the testimony on that subject relates.

Upon a further consideration of the case, we have reached the conclusion that the judgment can be affirmed as to all damages allowed, except the item of nine hundred dollars for loss of profits. This makes it necessary to consider the other points presented by the record and not disposed of by the previous opinion.

There was no error in refusing to strike out the eighth, ninth, tenth, eleventh, twelfth, and thirteenth paragraphs of the complaint, nor in overruling the demurrer thereto. The paragraphs mentioned set forth in detail the items of damages which the plaintiff claimed, and were properly made a part of the complaint. The same is true of the amended and supplemental complaint. It merely added an additional item

of damages, and it was within the discretion of the court to allow it to be filed upon the trial.

An examination of the evidence, as found in the transcript, satisfies us that there is sufficient evidence to support all the findings upon which the balance of the judgment rests. The action of the court in allowing plaintiff to file the affidavits of Barnes and Baker after the hearing and decision of the motion for a new trial, although it may have been irregular, was not injurious to the appellant. Indeed, it appears that the court below did not consider those affidavits, and they should not have had any place in the record.

It was within the discretion of the court to refuse to allow the defendant to file the proposed amendment to her answer to the amended and supplemental complaint. The amendment was not offered until after the trial had closed, and the effect of the amendment would have been to present a new issue. It is well settled that the allowance of such amendments at that time is a matter within the discretion of the trial court. It does not appear in this case that the discretion was abused.

The court allowed the plaintiff the sum of one hundred and sixty-seven dollars for the cost of erecting a temporary building upon the lot, in which to set up his machinery and carry on his business during the delay in the completion of his permanent building; also fifty-one dollars for the expenses of setting up the machinery in the temporary building, and thirty dollars, found to be the expense which would be incurred when the machines are hereafter taken down to be reset in the permanent building on its completion. This expenditure was made to prevent as much as was possible of the delay in resuming business consequent upon the defendants' obstruction to the erection of the permanent building, and by that means to prevent further loss of profits of the business from the delay. And, as is shown in the Department opinion, the plaintiff in this way succeeded in resuming business in the temporary building sooner than he could have completed the permanent building, and thereby prevented any loss of profits from the delay, except such as may possibly hereafter occur during the time that may be lost between the taking down of the temporary building and the completion of the new, if such taking down prove to be necessary. But, as this was

the sole purpose of making these expenditures, and as they were not designed to, and would not, prevent loss arising from delay in the mere construction of the permanent building, aside from loss of profits of the business, it follows that the right to recover these items as damages depends on the right to recover loss of profits, if any had occurred. It is the duty of a party who is threatened with damages of this character, and who has notice of the danger of loss, to do what he reasonably can to prevent such loss. And if in so doing he incurs expenses which he would not otherwise have to incur, and succeeds in preventing the loss to an amount greater than the expenses thus incurred, these expenses, if made in good faith, become an item of the damages which he is entitled to recover for the injury or wrong which caused the danger. But in order to have this right of recovery, the loss which he seeks to prevent must be a loss which he could have recovered as damages if it had occurred. This makes it necessary to decide whether or not the plaintiff would have had the right to recover damages for loss of profits under the circumstances existing in this case.

It may be admitted that in ordinary cases damages for loss of prospective profits of a business cannot be allowed, the reason being that they are so remote, uncertain, and speculative that a satisfactory estimate of the amount of the loss cannot be made. But this rule does not apply to a case where, by the wrongful act of another, a person is interrupted in carrying on a business which is established.

"The best-considered cases agree that, where an established business is wrongfully injured or destroyed, the owner of the business can recover the damages sustained thereby, and that upon this question evidence of the profits he was actually making is admissible." (*Lambert* v. *Haskell,* 80 Cal. 619; *Dwyer* v. *Carroll,* 86 Cal. 305.; *Hawthorne* v. *Siegel,* 88 Cal. 159.) It has been held that damages for loss of a crop not planted is too uncertain and does not come within the rule of these cases. (*Crowe* v. *San Joaquin etc. Co.,* 130 Cal. 310.) But it could scarcely be said that the raising of a new sort of crop, by means of irrigation on land that had not before been irrigated, is an established business; and in view of these differences, it is clear that this case does not infringe upon the rule of the other cases.

It sufficiently appears in this case that the business of the plaintiff came within the rule. The court finds that plaintiff had been engaged in the business for several years before the injury occurred, at an average daily profit of forty-five dollars. The evidence is sufficient to support this finding. While it is true that the business had been previously carried on at another place near by, yet it is shown by the evidence that the business was not local, nor dependent on advantages arising from the immediate surroundings; that it was the manufacture and sale of machinery upon which the plaintiff had a patent and a consequent monopoly; that the sales were chiefly by mail orders, and that a change of a few rods in the location of the factory and place of sale would not have seriously affected the volume of business. It is true that the interruption began from the destruction by fire of the premises in which the business was conducted. But the defendant had no right to cause additional delay in resuming the business by her wrongful refusal to remove her building from the new site on which the plaintiff intended to erect his building. It also appears that the delay arising from the time required for the erection of a new building would not have caused a material falling-off in the business. It is therefore manifest that the defendant would have been liable for damages for loss of profits, if the plaintiff had not prevented such loss by the temporary structure, and, consequently, that she should be held liable for the expenses of this honest and successful effort to prevent further loss.

Ninety-six dollars was allowed as damages for the expense of watchmen employed to guard and protect the new building during the delay in its erection caused by the defendant. It appears from the findings and evidence that these watchmen were made necessary by the delay, and it is clear that the plaintiff was responsible for the expense thus caused.

It is proper to allow the plaintiff as damages the difference between the price of lumber at the time he negotiated for it, immediately before he discovered that the building could not be continued, owing to the obstructions from the defendant's house, and the value at a time subsequent thereto. As the defendant was responsible for the delay, she must be held responsible for all the damages proximately arising therefrom. Although the plaintiff bargained for the lumber before the

erection of the building was suspended, yet it appears that the lumber dealers refused to .hold the contract open, and that in the mean time lumber rose in price, so that the plaintiff would have to pay the additional sum allowed to procure the lumber necessary to complete his building. The defendant is clearly responsible for this difference.

The items of damage thus found by the court amount to five hundred and twenty-seven dollars and seventy-five cents. Additional damages were allowed by the court to the amount of forty-one dollars and twenty-five cents, which is not included in any item of special damages; but, as the court finds that the defendant maliciously, and for the purpose of harassing and oppressing the plaintiff, refused to remove her building, and as there is evidence sufficient to support this finding, it must be presumed that this amount was allowed as exemplary damages.

There was no error in the action of the court refusing to allow the defendant to prove that each house on the block was set too far to the north and extended over the line of the lot of the adjoining owner. The fact that other houses were situated on the lots of the adjoining owners did not at all tend to excuse the defendant for allowing her buildings to project over the lot of the plaintiff. There was no issue in the case justifying the admission of evidence to show that the defendant had acquired a right to maintain her houses over the plaintiff's lot by adverse possession, acquiescence, or estoppel, and it does not appear that the proposed testimony was offered for that purpose.

There was no substantial evidence offered in rebuttal of the several items of damages above referred to, and there is no serious dispute as to the amount of these several items, the chief contention of the appellant being, that no damages at all should be allowed on account of any of them, because they are not necessary or proper elements of damage.

The judgment should be modified by striking therefrom the item of nine hundred dollars allowed for loss of profits, and permitting the judgment to stand as to the balance.

It is therefore ordered that the judgment of the court below be modified by striking out and deducting therefrom, as of its date, the sum of nine hundred dollars, and that, as so modified, the judgment be affirmed.

Angellotti, J., Van Dyke, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.

The following is the opinion rendered in Department One, July 3, 1902, referred to in the foregoing opinion:—

THE COURT.—Plaintiff brought the action to abate a nuisance and for damages. He had judgment abating the alleged nuisance and for fourteen hundred and sixty-nine dollars damages.

It appears from the findings, supported by the evidence, that plaintiff was engaged in manufacturing a machine called a stump-puller, in San Francisco, in the vicinity of the corner of Zoe and Bryant streets; his shop was destroyed by fire July 4, 1898; in the latter part of July he purchased a lot adjoining defendant's lot, on Zoe Street, not far from his former place of business, on which to erect a building for the purpose of resuming the said business therein; early in August he commenced the construction of a building on this lot in which to manufacture said machines; he soon discovered that defendants' buildings on her adjoining lot leaned over his lot in some places as much as three inches, although the foundations of her buildings did not encroach on plaintiff's lot; upon being notified of the obstruction defendant promised to remove it, and plaintiff built the foundations for his new building, which he completed about August 29th, but could go no further without yielding three inches of his lot to defendant; and as she then refused to remove the obstruction, plaintiff erected a temporary building on the rear of his lot, set his machinery in this building, and had it in place ready for business September 27, 1898.

Among other items of damage allowed by the court was forty-five dollars per day for twenty days as profits of the business which plaintiff would have made had defendant not obstructed plaintiff in the erection of the permanent building.

The principal point in the case, raised on demurrer and on objections to the evidence, was, that such damages were speculative, conjectural, uncertain, and too remote. The view we take of the evidence makes it unnecessary to consider this question.

Plaintiff testified that the foundations to his permanent building were about finished on August 29, 1898, when he was stopped from further proceeding with the building. He intended to erect a two-story building, and he testified that he could have finished it in sixty days, so as to be ready for occupancy about November 1st. He said his intention was to finish the lower portion so as to utilize it for a shop, and that the temporary building on the rear of the lot would not interfere with the proposed main building, and that he did not intend to remain in the temporary building.

"*The Court.*—Your building was burned on the 4th of July, was it not?—A. Yes, sir.—Q. And you began the erection of this new building on the 28th day of August?—A. 29th. . . . —Q. Suppose you had not been obstructed in the erection of this building, when would you have been ready to begin business again?—A. I think about in six weeks; a month or six weeks, we could have got the building far enough along to put the machines in and commence to work there before the building was complete; that was my intention." Again he answered: "I think in about six weeks we would have been able to get things straightened out to commence business." It thus appears that plaintiff could not have been prepared to manufacture his machines short of forty-two days from August 29th, even if defendant had interposed no obstructions to the work, and this would have brought the time later than September 27th, when plaintiff resumed work in his temporary building. Under such a state of facts it cannot be said that the delay in the manufacture of his machines—between August 29th and September 27th—was caused by defendant. He did in fact fully resume his business, not only within the time but sooner than he could have done so had there been no obstruction offered by defendant. We can find no warrant in the evidence for allowing for profits for twenty days or any other number of days, even if it be admitted, which is stoutly denied, that the damages could be measured by the loss of profits in the business. The evidence showed that defendant is maintaining a nuisance by which plaintiff is denied the free use of his property, and the judgment that the obstruction be removed and the nuisance abated was justified. But the court erred in its finding and judgment as to the damages. That plaintiff is entitled to some damage must be conceded; but as we cannot

foresee what the evidence will disclose in another trial we are not in a position to suggest the true measure of damage to which plaintiff is entitled.

Rehearing denied.