**UNITED STATES of America,
Appellant,**

v.

**Adolph G. SUTRO, Appellee.**

**Adolph G. SUTRO, Cross-Appellant,**

v.

**UNITED STATES of America,
Cross-Appellee.**

**No. 14588.**

United States Court of Appeals
Ninth Circuit.

May 7, 1956.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Marvin Zinman, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Gray, Cary, Ames & Frye, John M. Cranston, Thomas C. Ackerman, Jr., San Diego, Cal., for appellee.

Before STEPHENS, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

In 1946, Sutro bought certain farm lands riparian to Pilgrim Creek. Before that time, the government had constructed a sewage disposal plant for Camp Pendleton, the effluents of which were deposited in the stream until 1952. Pilgrim Creek became so polluted that it was not fit for the irrigation of lands used for growing of vegetables intended for human consumption.

The cause was tried by a court without a jury under the Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680. It was found that the employees of the government were negligent in operating the sewage disposal plant, as a result of which the waters of the stream became polluted. The District Court found $18,918.36 represented loss of rental value to Sutro, while $13,003.03 was awarded as damages for increased building costs.

Appeal was filed by the government on the ground that there should have been no award for the increased costs of building contemplated facilities. Sutro cross-appeals (1) because damages were not allowed for increased cost of erecting a residence and guest house, including sewerage, fencing, grading and incidentals, and for the increased expense of the irrigation system, machinery and equipment for the repair shop, farm machinery and equipment, (2) because the rental value allowed was too small, and (3) because he was not allowed expenditures for the purpose of minimizing damages.

■ As far as the appeal of the government is concerned, no question of law is involved. The United States conceded injury to plaintiff had been caused by the negligence of its agents in the operating of the sewage plant. In an action under the Federal Tort Claims Act for a tort committed in California, the legislative and decisional law of the state applicable between private parties controls. The measure of damages as a matter of law is governed thereby.

■ "The amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not" [1] has been confirmed by the California state courts as the touchstone of allowable damages.[2]

In accordance with the common law, this section is not construed to permit the recovery of remote or speculative damages.[3] It has been recognized, however, that the statute lays down no fixed inflexible rule whereby the measure of damages for injury to property can be reduced to a mathematical certainty.[4] The selection of a formula most appropriate to compensate the injured party is largely within the sound discretion of the trier of fact. If the rules of law had been correctly laid down, a general verdict for this sum of damages would have been upheld unsegregated.

The trial court apparently was following the rules laid down by the California courts. The formula used by the trial court required that the damages should have been proximately caused by the negligence of the government agents and that such as were remote and speculative should be excluded: Concretely, the award was based upon injuries which were the natural and direct consequence of the negligence and which flowed naturally therefrom by reason of a causal connection between the negligence and the injury.

1. California Civil Code, § 3333.

2. Wells v. Lloyd, 6 Cal.2d 70, 56 P.2d 517.

3. Taylor v. Hopper, 207 Cal. 102, 276 P. 990; Ramsey v. Penry, 53 Cal.App.2d 773, 128 P.2d 399.

4. Basin Oil Co. v. Baash-Ross Tool Co., 125 Cal.App.2d 578, 271 P.2d 122.

The trial court found that the loss of rental for the property during the six years while these conditions were continuously maintained was one of the consequences. The government concedes this is correct. The trial court also found that the loss to plaintiff in increased costs of improvements which plaintiff had contemplated erecting for the use of the place as an agricultural property was compensable. The argument is that plaintiff was not prohibited from building the improvements if he had so chosen. But this argument comes with poor grace from the tort-feasor who maintained these harmful conditions for this long period of time. Each day of this time there was a new offense and a new and continuing injury. Plaintiff would have been unwise to have commenced further construction. He could not speculate upon the cessation of tortious conduct by the government.

Since the law of California is binding as to measure of damages, as well as other features under the Tort Claims Act, full consideration must be given to the opinion of the California Supreme Court, entitled Barnes v. Berendes, 139 Cal. 32, 69 P. 491, 72 P. 406. There plaintiff had started construction of a building upon a lot which he had purchased adjoining one on which defendant already had a house. The proposed building was designed as a manufacturing plant. After a start had been made, it was discovered that, although the foundations were within her lot, the house of defendant overhung plaintiff's lot by three inches. Damages were allowed in the lower court for loss of estimated profits of the manufacturer and for an increase in the price of necessary lumber for construction during the period of delay. The Supreme Court held that damages could not be allowed for profits lost by the business, since plaintiff had in fact operated in a temporary location and the expenses of setting up this operation had been charged by the trial court to defendant.

On the other hand, it was held to be "proper to allow the plaintiff, as damages, the difference between the price of lumber at the time he negotiated for it, immediately before he discovered that the building could not be continued, owing to the obstructions from the defendant's house, and the value at a time subsequent thereto. As the defendant was responsible for the delay, she must be held responsible for all the damages proximately arising therefrom. Although the plaintiff bargained for the lumber before the erection of the building was suspended, yet it appears that the lumber dealers refused to hold the contract open, and that in the meantime lumber rose in price, so that the plaintiff would have to pay the additional sum allowed, to procure the lumber necessary to complete his building." [5]

The question of whether the rule of law established requires damages to be allowed in similar circumstances or adjudicates the inference that such damages were the natural consequences of a wrongful delay in the construction need not be debated. Suffice it to say the trial court here drew the inference under the evidence. Therefore, the findings were not clearly erroneous. The trial court allowed as damages here the increased cost of construction of a house to lodge employees on the farm, of a shed to store agricultural products and supplies, of a shed to store machinery for use on the farm and of a shop for the repair of such machinery and other farming necessities. Each of these buildings was sufficiently connected with the business operation so that increased costs of construction could be properly granted if, in the judgment of the trial court, the delay in construction was caused by fault of employees of the government.

The judgment of the trial court, challenged by the appeal of the government, is affirmed.

Plaintiff has filed a cross-appeal contending that the trial court improper-

**5.** 139 Cal. 32, 37–38, 72 P. 408.

ly denied damages for the increased cost of the following items: Residence building, guest house, sewerage, fencing, landscaping and miscellaneous improvements, domestic water supply, irrigation work, irrigation pumps, shop machinery and equipment, farm machinery and equipment, and automobiles and trucks. Inasmuch as construction started upon the residence before pollution was discovered, at first blush it might seem that the rule of the Barnes case would apply. However, the question was essentially one of fact. Of course, it might be argued that a residence upon a farm is an essential to the performance of the necessary work thereon, and thus the business or commercial factors of the operation are brought to bear. But that is not necessarily true. The record seems to reflect certain conditions which indicate that the residence was to be erected for simple occupancy of the owner. In any event, this Court should not write into the judgment their idea of the proximate results of the acts of employees of the government. The trial court has found that any damage occasioned by the delay in construction of this item was not connected with a business operation, since it was "found to fall in the categories of uncertainty, remoteness, infeasibleness [and] unnecessary."

The same conclusion must be reached with regard to the sewerage and domestic water supply which are connected with the dwelling house. The guest house for itinerant laborers had not progressed sufficiently so that it necessarily fell within the rule and besides it may have been deemed by the trial court unnecessary.

The trial court disallowed the increased cost of installing an irrigation system. There is more definite ground for disallowance of this item. Possibly plaintiff may have thought of installing the particular system in 1946, but he had no plans and specifications prepared for its installation until 1953. It is obvious that construction was extremely speculative. Plaintiff also claimed that the increased price of tools which were required to handle the place in 1953 should be added to his damages. This element is compensated by the rental value awarded. When plaintiff buys new tools, he will have the advantage that they are presently worth what he has paid for them. Besides, the list prepared as a basis for damages was one made up in 1953. It is entirely speculative as to whether or not these would have been purchased in 1946. The trial court excluded evidence of the increased cost of fencing and of acquiring certain farm machinery because no plans, drawings or specifications were prepared until 1953. It is clear enough that there should be no recovery for such items.

■ Plaintiff's criticism of the award of loss of rental value is that the trial court chose to follow the expert who testified for defendant. This is a pure question of fact and we have no method of determining what the value of the land was. The trial court is not bound to follow any expert. Such a question of fact as to valuation is peculiarly one which must be left to the trial court alone. The trial court made awards on an acreage basis for loss of rental. Plaintiff claims that these figures indicated that the trial court excluded certain acreage from the award which properly should have been placed within it. Again, this is a question of fact. We conclude from reading the record that there was sufficient basis for the award of the trial court. Plaintiff likewise urges that the trial court made a mistake in a deduction of what was conceived the land should have brought for rental notwithstanding the pollution. The argument of plaintiff does not prove to our satisfaction that there was a mathematical error, but rather we believe that there was basis for deducting a much larger sum than that which was actually taken away.

■ Finally, there is complaint by plaintiff that expenses occurring in trying to reduce the damages were not allowed. It is a principle of law that reasonable expenses incurred in a proper effort to mitigate damages may be recov-

ered against the tort-feasor. The trial court excluded evidence offered in mitigation of depreciation of equipment, auto and truck maintenance, rental of equipment, fees for accountants, legal fees not connected with this law suit and insurance on the premises. It seems clear enough that these offers were properly rejected. Also, plaintiff offered to prove $15,977.66 were expended by him in traveling during the period of the pollution. This offer was likewise rejected. Unless there were further connection than what has been shown in this record, no basis was laid for recovery of these items. As a result, the cross-appeal should likewise be held unavailing.

Affirmed.