[Civ. No. 36600. Second Dist., Div. Four. Sept. 30, 1971.]

ROGER J. DIAMOND, Plaintiff and Appellant, v.
GENERAL MOTORS CORPORATION et al.,
Defendants and Respondents.

## COUNSEL

Roger J. Diamond, in pro. per., for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Sherman Welpton, Jr., Bruce A. Toor, Arthur L. Sherwood, McCutchen, Black, Verleger & Shea, G. William Shea, Philip K. Verleger, Franklin H. Wilson, Lawler, Felix & Hall, Reed A. Stout, Roger Arnebergh, City Attorney, James A. Doherty, Gilmore Tillman, Milton N. Sherman and Edward C. Farrell, Assistant City Attorneys, Arthur T. Devine and Brian Crahan, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

**FILES, P. J.**—This is an action brought by plaintiff "on behalf of himself and all other possessors of real property in, and residents of, the County of Los Angeles," as a class numbering 7,119,184 persons. The named defendants are 293 industrial corporations and municipalities who are alleged to have polluted the atmosphere of the county. Additional defendants, whose names are unknown to plaintiff, are also sued under the fictitious name of "Doe 1 through Doe 1,000." The complaint seeks billions of dollars in compensatory and punitive damages,[1] and "an injunction permanently restraining defendants from emitting and discharging pollutants into the atmosphere of the County of Los Angeles." As against those defendants which are engaged in the manufacture and distribution of automobiles, the complaint also seeks "an injunction restraining the sale and registration in the County of Los Angeles of motor vehicles manufactured and produced by defendants which pollute the atmosphere" and "the appointment of a special administrator to administer the retrofitting of each motor vehicle registered in the County of Los Angeles and produced and manufactured by the defendants," the cost of such retrofitting to be assessed against the defendant manufacturers.

A number of defendants appeared and demurred to the first amended

---

[1] The total amount of damages prayed is uncertain, depending upon whether the damages alleged in the several counts are read as cumulative or redundant.

complaint. All demurrers were sustained without leave to amend upon the grounds of (1) misjoinder of parties plaintiff, and (2) failure to state facts sufficient to constitute a cause of action. In a memorandum the trial judge explained his opinion that (1) this is not a class action, (2) a private person may not maintain an action for the abatement of a public nuisance without pleading special injury to himself, (3) the court lacks facilities or competency to undertake the problem of abating air pollution within the Los Angeles Basin, and (4) the complaint fails to state a cause of action in favor of plaintiff as an individual. Several orders of dismissal were made, separately dismissing the action as to particular named defendants. Plaintiff filed notice of appeal with respect to the dismissal of 41 of the defendants only. Subsequently plaintiff abandoned his appeal as to some of them.[2]

The amended complaint is drafted in 14 counts, setting forth conventional allegations for tort claims based upon theories of negligence, nuisance, trespass and products liability. Injury to the persons and property of the 7,119,184 residents is alleged to have resulted.

In substance, the automobile manufacturers are charged with negligently producing and distributing machines which are defective in that they emit harmful substances into the atmosphere; petroleum refiners are charged with manufacturing and distributing motor fuel which, in its intended use, pollutes the atmosphere; owners of industrial plants, steam generating plants, gasoline filling stations and airports are charged with unnecessarily discharging harmful substances and odors into the air.[3] The conduct of the defendants is characterized as wilful, malicious and oppressive.

The complaint is plainly an attempt to deal with the problem of air pollution in Los Angeles County as a whole, as between all of the individuals in the county constituting a class of plaintiffs, and the industries which plaintiff believes to be responsible for the problem, as defendants. The failure of plaintiff to perfect appeals as against a substantial number of the dismissed defendants somewhat reduces the size of the undertaking; but we review the superior court's judgment upon the record which was before that court.

As we shall explain, we believe the trial court properly concluded that the class action which plaintiff is attempting may not be maintained. This is a case where (1) there are significantly disparate interests within the alleged class; (2) the right of each member to recover (as well as the

---

[2]The clerk's transcript lists 32 respondents. The opening brief states 27 remained at the time it was filed. Respondents' briefs have been filed on behalf of 17 defendants.

[3]The ninth cause of action, directed against airlines which discharge contaminants from their aircraft, and the tenth cause of action, against railroads whose locomotives discharge contaminants, are not before us. None of the defendants named in those causes of action is a party to this appeal.

amount of his recovery) will depend upon substantial issues which must be litigated as between individual plaintiffs and defendants; and (3) the number of parties, the diversity of their interests, and the multiplicity of issues all in a single action would make the proceeding unmanageable.

The memorandum written by the trial judge states that the dismissal was without prejudice to the filing of an action by any member of the purported class for personal injury or property damage. Although that declaration was not carried forward into the judgments, it is a correct statement of the applicable law. (See *Goddard* v. *Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 51 [92 P.2d 804]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 173, 174, p. 3315.) ■ The dismissal was not on the merits. The court did not decide whether any resident of the county is entitled to any relief against any or all of the defendants. Thus the dismissal is not a bar either to individual actions, or to other class actions appropriately framed.

### The Class Suit As an Action for Damages

The substance of the factual allegations of the damage claims (other than the defective products counts against the automobile and oil industries) is that the defendants are maintaining a continuing public nuisance.[4] ■ Ordinarily the abatement of such a condition is the business of the sovereign, acting through its law officers. (See Civ. Code, §§ 3491, 3494; *California Oregon Power Co.* v. *Superior Court* (1955) 45 Cal.2d 858, 87,1 [291 P.2d 455]; *People* v. *McCue* (1907) 150 Cal. 195 [88 P. 899].) Civil Code section 3493 provides: "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Plaintiff here attempts to bring his complaint within that statute by alleging that each member of the class has suffered special injury in that each "is prevented from enjoying his own unique property." No particulars of these special injuries are set forth.

Plaintiff relies upon such cases as *Fisher* v. *Zumwalt* (1900) 128 Cal. 493 [61 P. 82] for the proposition that a single plaintiff who is specially damaged by a public nuisance may have relief in the form of damages and injunction; and plaintiff argues that he is simply combining here all of the special damage claims of the persons he proposes to represent.[5] This means

---

[4]Civil Code section 3480: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

[5]This concept of common-special damages seems to conflict with a traditional concept of special or particular damage in private nuisance cases. Dean Prosser has

that plaintiff is trying to allege, in a single cause of action, 7,119,184 claims for unliquidated damages arising out of 7,119,184 special injuries.

Requiring plaintiff to state separately the seven million causes of action, and to plead factually the damage as to each, would in and of itself constitute a practical bar to this action. If we were to ignore the pleading problem and allow plaintiff to come into court with a single general allegation, the trial court's problems would be only beginning. Whether an individual has been specially injured in his person will depend largely upon proof relating to him alone—going to such matters as his general health, his occupation, place of residence, and activities.[6] Whether a parcel of real property has been damaged will depend upon its unique characteristics, such as its location, physical features and use.

The problem of trying a case of this kind is compounded by the joinder of a large number of defendants who are not alleged to have acted jointly. Nor has plaintiff alleged, or suggested that he could allege, any facts which would make one defendant vicariously liable for the acts of others. Thus the critical fact of injury would have to be litigated on distinct facts by each of the seven million residents against each of the defendants.

Plaintiff points out that under Code of Civil Procedure sections 379a, 379b and 379c, where he is in doubt as to which person is liable, he may join all so that the court may determine which is liable. Although the code authorizes the joinder, this does not eliminate the difficulty of determining, from the evidence, the facts upon which liability may be based with respect to each plaintiff and as against each defendant.

In addition to the counts of the complaint which allege nuisance, there are two counts which add allegations that the described conditions constitute trespasses; and there are four counts which seek damages from the automobile and oil industries upon theories of negligent manufacture and strict liability for defective design. Every one of these counts, whether stated in the language of trespass, negligence, or strict liability, presents the same basic problem of trial and proof. Each is an aggregation of tort claims for unliquidated damages; each requires a determination of the fact of injury (as well as the amount of damage) separately as to each resident as against each defendant.

---

said: "A considerable class of persons, such as landowners near a factory who are inconvenienced in their dwellings by its dust, smoke and odors, may sue and recover. It is only when the class becomes so large and general as to include all members of the public who come in contact with the nuisance, that the private action will fail." (Prosser, *Private Action for Public Nuisance* (1966) 52 Va.L.Rev. 997, 1009.)

[6]See Prosser, *Private Action for Public Nuisance* (1966) 52 Va.L.Rev. 997.

This complaint lacks the characteristics which were found to justify a class action in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal. Rptr. 796, 484 P.2d 964] and *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]. In *Daar* and *Vasquez* the class was composed of consumers or customers who had dealt with the defendants in an identifiable series of similar transactions. Here we have an aggregation of individual tort claims of persons classified only by their residence within a political subdivision of the state.

In *Daar* there was a single defendant and in *Vasquez* a single group of four defendants engaged in a common business scheme. Here we have hundreds of defendants each of whom is entitled to have its liability determined independently of each of the other defendants. In *Daar* and *Vasquez* the main issues upon which liability might rest were common to all members of the class, and the individually triable issues were relatively simple. Here the nature of the claim is such that substantial and difficult issues can only be resolved on an individual basis. (See *Slakey Brothers Sacramento, Inc.* v. *Parker* (1968) 265 Cal.App.2d 204, 209 [71 Cal.Rptr. 269]; *Los Angeles Fire & Police Protective League* v. *Rodgers* (1970) 7 Cal.App.3d 419, 425 [86 Cal.Rptr. 623].)

The complexities which militated against class actions in *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 911 [69 Cal.Rptr. 612, 442 P.2d 692], and *Weaver* v. *Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 [198 P.2d 514] are minuscule compared to what is involved here.

■ We know judicially that claims based upon personal injury and property damage resulting from air contamination may and sometimes do result in the recovery of substantial damages. (See *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265 [288 P.2d 507] affirming an award of $9,541 for damage to a home and shop; *Hagy* v. *Allied Chemical & Dye Corp.* (1953) 122 Cal.App.2d 361 [265 P.2d 86] affirming an award of $30,000 to a husband and wife.) If the charging allegations of the complaint are true,[7] some residents must have sustained damages in large amounts. It cannot be assumed here, as in *Daar* (67 Cal.2d at p. 715), that "absent a class suit, defendant will retain the benefits from its alleged wrongs."

■ Plaintiff argues that the trial court should at least have allowed him

---

[7]The complaint alleges that ". . . plaintiff, and all others similarly situated and on behalf of whom plaintiff has brought this suit, have suffered the following injuries and damages: shortening of life span; increased chances of suffering heart attack; emphysema; lung cancer; damage to and destruction of body tissue; eye irritation; brain damage; exhaustion due to lack of oxygen; fatigue, and many other injuries."

to amend his complaint to state his individual cause of action. Under the particular circumstances of this case we think the ruling was not an abuse of discretion. Plaintiff's purpose was and still is to persuade a court to deal with air pollution in a massive class action. A complaint based upon his individual claim would have been very different. It is most improbable that he could have alleged in good faith that the conduct of every defendant named in the class action complaint injured him as an individual. It was obvious to the trial court that plaintiff had no intention of abandoning his class theory because of an adverse ruling on the demurrer. The procedure adopted by the trial court, in dismissing this action without prejudice to an individual action, framed the issue which plaintiff was entitled to present to the appellate courts, and preserved plaintiff's option to proceed individually if he chose. The trial court's decision was an orderly and practical one.

### The Class Suit for Injunctive Relief

In aggregating the claims of seven million residents for an injunction against air pollution, plaintiff presents a superficially attractive question of common interest. Everyone is interested in clean air. But an analysis which takes into account matters of common knowledge, as well as the state of the existing statutory law upon the subject, will disclose that the issue is not that simple.

We recognize, as did the trial court, that an excessive demand for relief does not make a complaint vulnerable to general demurrer so long as the complaint does state facts entitling the plaintiff to some relief. But in deciding whether the complaint states a cause of action on behalf of a class, the claimed efficacy of the group relief must be considered, since an important function of the class action is to provide an economical and effective group remedy. (See *Vasquez* v. *Superior Court* (1971) 4 Cal. 3d 800, 807 [94 Cal.Rptr. 796, 484 P.2d 964].)

The complaint prays "an injunction permanently restraining defendants from emitting and discharging pollutants into the atmosphere of the County of Los Angeles." Plaintiff acknowledges that he does not expect exactly that much relief. The immediate effect of such an injunction would be to halt the supply of goods and services essential to the life and comfort of the persons whom plaintiff seeks to represent. It is common knowledge that most of the industries in the county rely upon the combustion of oil or natural gas as a source of energy, or they purchase electrical power which one of the other defendants is generating by means of such combustion, which produces some of the contaminants referred to in the complaint. Moreover, many industries, which are essential, or at least socially useful,

give off contaminants as a part of their manufacturing process. An outright prohibition against the discharge of contaminants would close most industrial activity for the time being. The trial court, in its memorandum opinion, referred to the impracticability of the relief prayed. Adverting to this comment, plaintiff states in his opening brief, "The Judge certainly should have realized that plaintiff might settle for less than all he was seeking."

Once it is acknowledged that a superior court cannot, by decree, abolish air pollution, it is appropriate to face some demonstrable realities of the problem which plaintiff is asking the court to solve. We do not deal with a simple dispute between those who breathe the air and those who contaminate it. The need for controls is not in question. The issue is not "shall we," but "what kind, how much, how soon."

Both the United States Congress and the California Legislature have decided that the discharge of air contaminants must be controlled. Legislative enactments have provided for administrative machinery at the federal, state and local levels. These agencies conduct research, hold public hearings, and, upon the knowledge thereby acquired, set and revise the allowable limits for the discharge of the various kinds of contaminants. The statutory systems provide means for enforcement of the standards through license revocation, civil injunctions and criminal prosecution.[8]

Plaintiff's brief makes it clear that his case is not based upon violation of any existing air pollution control law or regulation. His position is that the present system of statutes and administrative rules is inadequate, and that the enforcement machinery is ineffective.[9] Plaintiff is simply asking the

---

[8]See the federal Clean Air Act, 42 United States Code, section 1857 et seq., as amended December 31, 1970 (84 Stat. 1676); California's Mulford-Carrell Air Resources Act (Health & Saf. Code, § 39000 et seq.); Pure Air Act of 1968 (Health & Saf. Code, § 39080 et seq.); Nonvehicular Pollution Control (Health & Saf. Code, § 39077 et seq.); California Air Pollution Control District Act of 1947 (Health & Saf. Code, § 24198 et seq.), authorizing formation of county districts; Rules and Regulations of the Los Angeles County Air Pollution Control District requiring a revocable permit for the installation and use of any equipment, other than motor vehicles, which discharges contaminants in the air.

[9]The "Introduction to Argument" in the opening brief states at pages 4-5: "This lawsuit was prompted by the steady deterioration of the air supply of Los Angeles County, and the lack of any significant response by the executive and legislative branches of various levels of government. Legislative tinkering with ineffective laws, illusory, periodic bureaucratic reorganizations, and industry controlled administrators have led to drastic increases in discomfort, disease, and death. More and more, legal scholars have concluded that judicial intervention is necessary and proper."

The "Conclusion" in the reply brief states at pages 38-39: "The defendants who ask this Court to defer to the legislative and executive branches of the government are the same persons who continue to corrupt the system with their lobbying, influence

court to do what the elected representatives of the people have not done: adopt stricter standards over the discharge of air contaminants in this county, and enforce them with the contempt power of the court.

It is indisputable that there exists, within the community, a substantial difference of opinion as to what changes in industrial processes should be required and how soon, what new technology is feasible, what reduction in the volume of goods and services should result and what increase in production costs for the sake of cleaner air will be acceptable. These issues are debated in the political arena and are being resolved by the action of those elected to serve in the legislative and executive branches of government.

We assume, for the purposes of this decision, that notwithstanding the existing administrative machinery, anyone claiming to have sustained personal injury or property damage caused by an unreasonable discharge of contaminants into the atmosphere by one or more of the defendants could state a cause of action for his damages and for injunctive relief. But the class action attempted by plaintiff, as the purported representative of every resident of the county, is a wholly different kind of suit. █ The objective, which plaintiff envisions to justify his class action, is judicial regulation of the processes, products and volume of business of the major industries of the county.

It was entirely reasonable for the trial court to conclude from the face of the pleading that such an undertaking was beyond its effective capability. The plaintiff has paid the court an extravagant compliment in asking it to supersede the legislative and administrative regulation in this critical area, but the trial judge showed the greater wisdom in declining the tender.

The judgment is affirmed.

Jefferson, J., and Irwin, J.,* concurred.

A petition for a rehearing was denied October 19, 1971, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1971.

---

peddling, and campaign contributions. Defendants do not come into court with clean hands. This honorable Court is the only institution which they cannot contaminate. If there is to be a solution to this environmental tragedy, it will have to come from the judiciary."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.