[S.F. No. 23055. In Bank. Sept. 6, 1974.]

CITY OF SAN JOSE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
LANDS UNLIMITED et al., Real Parties in Interest.

448

450

## COUNSEL

Hoge, Fenton, Jones & Appel, Charles H. Brock and H. R. Lloyd, Jr., for Petitioner.

Burt Pines, City Attorney, Milton N. Sherman, Assistant City Attorney, James H. Pearson and Ronald J. Einboden, Deputy City Attorneys, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Morgan, Beauzay & Hammer, W. Robert Morgan, Becklund, Siner, Taketa & Salle, Goldstein, Barceloux & Goldstein, J. William Dawson, Fadem, Kanner, Berger & Stocker and Michael M. Berger for Real Parties in Interest.

## OPINION

**CLARK, J.**—We are called on to determine whether the trial court abused its discretion in certifying this case to proceed as a class action.

Plaintiffs, real parties in interest, filed an action against petitioner-defendant, City of San Jose,[1] on behalf of themselves and all real property

---

[1]For literary convenience, defendant in the trial court—petitioner in this proceeding—will be referred to as defendant. The reference to "plaintiffs"—real parties in this proceeding—will refer only to the named plaintiffs and not to the unnamed class members.

owners situated in the flight pattern of the San Jose Municipal Airport. Seeking recovery for diminution in the market value of their property caused by aircraft noise, vapor, dust, and vibration, they proceed on theories of nuisance and inverse condemnation.

Following discovery and pursuant to procedures we suggested in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513], defendant moved the trial court for an order declaring the action inappropriate as a class action. After affidavits were filed and hearing was held, the court found the action appropriate and ordered notification of class members.

Defendant then sought extraordinary relief, first contending the trial court, for lack of proper motion, was without jurisdiction to certify the class; and second, that the court had abused its discretion in certifying the class because: (a) The claims statutes prohibit the maintenance of class actions against governmental entities; (b) there is insufficient community of interest among the purported class members; and (c) the plaintiffs are inadequately representing the class.[2] Because the issues raised are substantial, we issued alternative writs of prohibition and mandate.

We conclude the trial court had jurisdiction to certify the class, but under the facts, it abused its discretion in doing so.

## Lack of Proper Motion

■ Defendant contends the court was without jurisdiction to certify the class suit as appropriate because the only motion before the court was limited to determining that the class was *not* appropriate. This argument lacks substance.

This court has urged trial courts to be procedurally innovative, encouraging them to incorporate procedures from outside sources in determining whether to allow the maintenance of a particular class suit. More specifically, we have directed them to rule 23 of the Federal Rules of Civil Procedure,[3] which provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." (Federal Rules Civ. Proc., rule 23(c)(1).) This determination may be made on motion of either plaintiff or defendant—or on the court's own motion. (Wright & Miller, Federal

[2]Defendant's challenges go only to the ability of the class action to proceed. No question is raised as to the propriety of the three named plaintiffs' individual actions, which cumulatively seek damages of $500,000.

[3]See *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 821.

Practice and Procedure, § 1785, p. 128.) The procedure followed by the trial court here is identical to that approved in *Johnson* v. *City of Baton Rouge, Louisiana* (E.D.La. 1970) 50 F.R.D. 295, 298.

█ Nor is there merit to defendant's claim a court may not on its own motion order notice to class members. Notice is mandatory under the federal rules (rule 23(c)(2)) and should be ordered as soon as possible after the court determines the class action appropriate. (Wright & Miller, *supra*, § 1788, p. 163.) Because of the constitutional importance of notifying absent class members—who are suddenly before the court—such notice should not be left to the whim of litigants.

The order here did not determine the *form* of notice, but were the class action to be upheld, the appropriate form could be determined in further trial court proceedings.

### ABILITY TO SATISFY THE CLAIMS STATUTES

Defendant asserts the trial court abused its discretion in certifying this purported class because the claims statutes prohibit maintenance of class actions against governmental entities for inverse condemnation and nuisance. It contends a class claim can *never* be filed which would fulfill the statutory requirements, relying on language to this effect in *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688 [108 Cal.Rptr. 392].

In considering defendant's contention we start from certain well-settled foundations: In actions for damages against local public entities, the claims statutes require timely filing of a proper claim as condition precedent to the maintenance of the action. (Gov. Code, §§ 905, 945.4; *County of San Luis Obispo* v. *Ranchita Cattle Co.* (1971) 16 Cal.App.3d 383, 390 [94 Cal.Rptr. 73].) █ Compliance with the claims statutes is mandatory (*Farrell* v. *County of Placer* (1944) 23 Cal.2d 624, 630 [145 P.2d 570, 153 A.L.R. 323]); and failure to file a claim is fatal to the cause of action. (*Johnson* v. *City of Oakland* (1961) 188 Cal.App.2d 181, 183 [10 Cal. Rptr. 409].)

█ The claims statutes provisions apply to actions brought both for nuisance and for inverse condemnation. (*Bellman* v. *County of Contra Costa* (1960) 54 Cal.2d 363, 369 [5 Cal.Rptr. 692, 353 P.2d 300]; *Dorow* v. *Santa Clara County Flood Control Dist.* (1970) 4 Cal.App.3d 389, 391 [84 Cal.Rptr. 518]; *Mosesian* v. *County of Fresno* (1972) 28 Cal.App.3d 493, 495 [104 Cal.Rptr. 655].) The fact that inverse condemnation is founded directly on the California Constitution (art. I, § 14) neither excuses plaintiffs from compliance with the claims statutes (*Powers Farms* v.

*Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 126 [119 P.2d 717]; *Dorow* v. *Santa Clara County Flood Control Dist., supra,* 4 Cal.App.3d 389, 391-392), nor renders the claims statutes unconstitutional. (*Crescent Wharf etc. Co.* v. *Los Angeles* (1929) 207 Cal. 430 [278 P. 1028];[4] *Dorow* v. *Santa Clara County Flood Control Dist., supra,* 4 Cal.App.3d 389, 391-392.)

Plaintiffs contend, and the trial court concluded, that the class claim filed here satisfied the claims statutes because the city had been provided with notice and information regarding the rights asserted against it, inasmuch as "a number of individuals potentially within the class had filed claims against the city in the past few years." Hence, the city could not sustain a claim of surprise.

We cannot accept this contention. ■ It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. (*Eastlick* v. *City of Los Angeles* (1947) 29 Cal.2d 661, 667 [177 P.2d 558, 170 A.L.R. 225]; *Jackson* v. *Board of Education* (1967) 250 Cal.App.2d 856, 859 [58 Cal.Rptr. 763].) It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel. (*Hall* v. *City of Los Angeles* (1941) 19 Cal.2d 198, 203 [120 P.2d 13]; *Powers Farms* v. *Consolidated Irr. Dist., supra,* 19 Cal.2d 123, 130; *Johnson* v. *City of Oakland, supra,* 188 Cal.App.2d 181, 184; *Allen* v. *L. A. City Board of Education* (1959) 173 Cal.App.2d 126, 129 [343 P.2d 170]; *Ghiozzi* v. *City of South San Francisco* (1946) 72 Cal.App.2d 472, 476 [164 P.2d 902]; *Eppstein* v. *City of Berkeley* (1942) 52 Cal. App.2d 395, 397 [126 P.2d 365].)

Thus, having rejected the trial court's rationale for finding the claim sufficient, we turn to defendant's contention that it is *impossible* for a class claim to satisfy the claims statutes and, therefore, the statutes *prohibit* the maintenance of such actions against governmental entities.

The applicable claims statute (Gov. Code, § 910) provides in part: "A claim shall be presented by the claimant or by a person acting on his behalf and shall show: [¶] (a) The name and post office address of the claimant; [¶] (b) The post office address to which the person presenting

[4]Overruled on other grounds in *Wilson* v. *Beville* (1957) 47 Cal.2d 852, 861 [306 P.2d 789].

the claim desires notices to be sent; [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; . . . and [¶] (f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed."

In determining the quantity of information required in a class claim to satisfy the provisions of the above section, we note the cases gauging sufficiency of claims must be divided into two groups.

The first treats claims where there has been *some* compliance with all the required elements—but compliance has been *defective*. (See, e.g., *Rowan* v. *City etc. of San Francisco* (1966) 244 Cal.App.2d 308 [53 Cal.Rptr. 88] (described place of accident as *"3350* Scott St." instead of *"3358-3360* Scott St."); *Johnson* v. *City of Oakland, supra,* 188 Cal.App.2d 181 (indicated accident occurred in front of 1819 *35th* Avenue instead of 1819 *34th·* Avenue); *Johnson* v. *City of Los Angeles* (1955) 134 Cal.App.2d 600 [285 P.2d 713] (indicated accident occurred on *southeast* corner instead of *southwest* corner of intersection); *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.* (1938) 28 Cal.App.2d 215 [82 P.2d 216] (verified by father instead of claimant minor child).) In these cases the test of "substantial compliance" controls: Is there sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit?

In the second group of cases the courts have been less lenient. Here, claims were successfully challenged for failure to comply entirely with a particular statutory requirement. (See, e.g., *Hall* v. *City of Los Angeles, supra,* 19 Cal.2d 198 (failure to state place of accident); *Whitson* v. *LaPay* (1957) 153 Cal.App.2d 584 [315 P.2d 45] (claim unverified); *Ghiozzi* v. *City of South San Francisco, supra,* 72 Cal.App.2d 472 (failure to state date and place of occurrence); *Eppstein* v. *City of Berkeley, supra,* 52 Cal.App.2d 395 (failure to state address of claimant).) In determining the sufficiency of such claims, the more liberal test of substantial compliance has not been applied—the courts recognizing "[s]ubstantial compliance cannot be predicated upon no compliance." (*Hall* v. *City of Los Angeles, supra,* 19 Cal.2d 198, 202; *Johnson* v. *City of Oakland, supra,* 188 Cal. App.2d 181, 183.)

■ From these two groups, we conclude that to gauge the sufficiency of a particular claim, *two* tests shall be applied: Is there *some* compliance

with *all* of the statutory requirements; and, if so, is this compliance sufficient to constitute *substantial* compliance?

To ascertain the quantity of information required in a class claim to satisfy the threshold "some compliance" test, we must first determine the meaning of "claimant" in section 910 as it relates to a class. There are two alternatives: "Claimant" can either be equated with each individual member of the class or with the class itself.

■ We conclude "claimant," as used in section 910, must be equated with the class itself and therefore reject the suggested necessity for filing an individual claim for each member of the purported class. To require such detailed information in advance of the complaint would severely restrict the maintenance of appropriate class actions—contrary to recognized policy favoring them. (Code Civ. Proc., § 382; see also *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800.) We do not believe the claims statutes were intended to thwart class relief.[5]

Moreover, treating the class as claimant is consistent with treatment of the class for purposes of filing the complaint. ■ While section 422.40 of the Code of Civil Procedure requires a complaint to name the "parties," it is settled the pleading need only establish the existence of an ascertainable class rather than name each member of the class. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 [63 Cal.Rptr. 724, 433 P.2d 732].)

■ Thus, to satisfy the claims statutes, the class claim must provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself. Because such information would meet the statutory requirements of name and address, *any* effort to identify the class would satisfy the *some compliance* test. Beyond this, the sufficiency of the identifying information must be measured by the *substantial compliance* test.

It is therefore clear a class claim may satisfy the claims statutes requirements. ■ Thus, we conclude these statutes do not prohibit class actions against governmental entities for inverse condemnation and nuisance.

However, defendant next argues that even if some class claims satisfy the claims statutes, the claim filed here failed to do so because the description of the class as those people "similarly situated" is insufficient to constitute substantial compliance.

---

[5]Language indicating a contrary conclusion in *Bozaich* v. *State of California, supra,* 32 Cal.App.3d 688, must be read in light of that court's limitation of its holding in its footnote 5, page 699, recognizing the possibility of proper class claims.

While, as noted above, we cannot accept the "no surprise" rationale by which the trial court approved the claim filed here, we need not decide whether this claim was sufficient. Extraordinary relief is not available to remedy defective compliance with claims statutes. (*County of Santa Clara v. Superior Court* (1971) 4 Cal.3d 545, 547-551 [94 Cal.Rptr. 158, 483 P.2d 774]; *Redlands etc. Sch. Dist. v. Superior Court* (1942) 20 Cal.2d 348, 360 [125 P.2d 490].)

## INSUFFICIENT COMMUNITY OF INTEREST

 Defendant next contends the trial court abused its discretion by certifying this class because there is an insufficient community of interest. The contention is correct.

 The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure. It rests on considerations of necessity and convenience, adopted to prevent a failure of justice. (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, 703-704.)

But while this section was designed to foster justice, class actions may create injustice. The class action may deprive an absent class member of the opportunity to independently press his claim, preclude a defendant from defending each individual claim to its fullest, and even deprive a litigant of a constitutional right. (Note, *Class Actions and Interpleader: California Procedure and the Federal Rules* (1953) 6 Stan.L.Rev. 120; Simon, *Class Actions—Useful Tool or Engine of Destruction* (1971) 7 Lincoln L.Rev. 20, 22; Note, *Comments on Vasquez v. Superior Court* (1971) 18 U.C.L.A. L.Rev. 1041, 1052, fn. 50, 1064.)

The initial response to these dangers was that, despite their widespread recognition, class suits were largely restricted. (Comment, *Vasquez v. Superior Court of San Joaquin County: A Class Action in Consumer Fraud* (1971) 8 Cal.Western L.Rev. 165, 167.) However, in more recent times, this restrictive tendency has dissipated as class actions have been utilized more extensively to meet the growing number of alleged "group wrongs" in an increasingly complex society.

Dealing with class actions in the past, this court has eliminated the requirements of a "common fund" (*Chance v. Superior Court* (1962) 58 Cal.2d 275, 288 [23 Cal.Rptr. 761, 373 P.2d 849]); a "common recovery" (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, 707); and the necessity that class members be "necessary parties." (*Weaver v. Pasadena Tournament of Roses* (1948) 32 Cal.2d 833, 841 [198 P.2d 514].) It has adopted new procedures to make the use of class suits more effective—again, urging

the trial courts to be innovative. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820-821.)

However, despite this court's general support of class actions, it has not been unmindful of the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. Instead, it has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. (*Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [108 Cal.Rptr. 1, 497 P.2d 225]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 810; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 713.) It has also urged that the same procedures facilitating proper class actions be used to prevent class suits where they prove non-beneficial.[6]

The trial court, in utilizing these procedures, certified the class appropriate—concluding there is as much community of interest here as in *Daar* and *Vasquez*. It further expressed belief that recent decisions by this court cast doubt on the continued validity of older cases such as *Weaver* v. *Pasadena Tournament of Roses, supra,* 32 Cal.2d 833. The trial court erred in both conclusions.

 Holding that a class action cannot be maintained where each member's right to recover depends on facts peculiar to his case, *Weaver* remains viable in this state. The rule exists because the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the "class judgment" determining issues common to the purported class. (32 Cal.2d at pp. 838-840, 842-843.)

This court has consistently recognized the continued validity of this rule. (See *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 704-705, 707-708; *Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 285; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 809, 811, 815-816; *Collins* v. *Rocha, supra,* 7 Cal.3d 232, 237-238.) Most significantly, in *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864 [69 Cal.Rptr. 612, 442 P.2d 692], this court, based on this rule, refused to certify a class suit, stating, " 'Applicable prec-

---

[6]In *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820-821, this court utilized the Consumers Legal Remedies Act to provide a hearing wherein the plaintiff would be required to demonstrate the appropriateness of maintaining the action as a class. Additionally, it incorporated the provisions of rule 23(c)(1) of the Federal Rules of Civil Procedure to make the trial court's certification of the class conditional so that the court would be able to respond should the class later appear inappropriate.

edents indicate that in observing the ascertainable class requirement they are at the same time giving recognition to the principle that a group of individuals' rights to recover, each of which is based on a separate set of facts, cannot be determined by a judgment in a class action.' [Citation.]" (68 Cal.2d at p. 912.)

The Courts of Appeal have likewise recognized the continued validity of *Weaver,* refusing to certify classes where the rule applied. (See, for example, *Bozaich* v. *State of California, supra,* 32 Cal.App.3d 688, 694-696; *Stilson* v. *Reader's Digest Assn., Inc.* (1972) 28 Cal.App.3d 270, 274 [104 Cal.Rptr. 581]; *Diamond* v. *General Motors Corp.* (1971) 20 Cal. App.3d 374, 380 [97 Cal.Rptr. 639, 47 A.L.R.3d 759].)

■ In determining whether sufficient community of interest exists to justify the maintenance of a class action, we start from certain settled premises: Before the imposition of a judgment binding on absent parties can be justified, it must be shown that substantial benefits both to the litigants and to the court will result. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 713; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 810.) The burden of such a showing falls on plaintiff (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820), and the ultimate determination of whether the class action is appropriate turns on the existence and extent of common questions of law and fact. As noted above, each member must not be required to individually litigate numerous and substantial questions to determine his right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants. (*Collins* v. *Rocha, supra,* 7 Cal.3d 232, 238.)

■ In applying these premises, it must be concluded the instant facts do not present a community of interest comparable to *Daar* or *Vasquez.* In those cases, the issue of the defendant's liability to the class as a whole could be determined by facts common to all. Liability to the class could be established by evidence defendant engaged in an illegal scheme to cheat or overcharge patrons, coupled with a showing from defendant's own books that defendant was successful in his scheme.[7]

However, the present action for nuisance and inverse condemnation is

---

[7] Similarly, see *Collins* v. *Rocha, supra,* 7 Cal.3d 232; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Metowski* v. *Traid Corp.* (1972) 28 Cal.App.3d 332 [104 Cal.Rptr. 599]; *Fanucchi* v. *Coberly-West Co.* (1957) 151 Cal.App.2d 72 [311 P.2d 33]; cf. *Diamond* v. *General Motors Corp., supra,* 20 Cal.App.3d 374.

predicated on facts peculiar to each prospective plaintiff. An approaching or departing aircraft may or may not give rise to actionable nuisance or inverse condemnation depending on a myriad of individualized evidentiary factors. While landing or departure may be a fact common to all, liability can be established only after extensive examination of the circumstances surrounding each party. Development, use, topography, zoning, physical condition, and relative location are among the many important criteria to be considered. No one factor, not even noise level,[8] will be determinative as to all parcels.

The uncontradicted evidence reveals the development, character, and uses of the geographic region of this proposed class are diverse. Within the region are industrial plants, public buildings, body shops, warehouses, gas stations, office buildings, multi-unit apartments, single family residences, and vacant land—some being farmed. The region is bisected by a major thoroughfare and bounded by a highway. Finally, a railroad right-of-way passes through a portion of the proposed region. .

Plaintiffs attempt to avoid the application of *Weaver* to this case, and thereby to sustain the class, by avoiding the need for individual evaluation. They attempt to divide the parcels of land represented by the class into subclassifications and then to determine, as a group, the diminution in value for all members in each subclassification. This scheme fails in two respects.

First, the scheme necessarily requires plaintiffs to disregard all liability for other forms of damage (i.e., actual physical injury to the property). As we shall conclude below, the representative of a class may not be allowed to commit such a breach of a fiduciary duty. Hence, the proposed classification system is unacceptable.

Second, the scheme is incompatible with the fundamental maxim that each parcel of land is unique. (Civ. Code, § 3387; see also *Porporato* v. *Devincenzi* (1968) 261 Cal.App.2d 670, 677 [68 Cal.Rptr. 210].) Although this rule was created at common law, the very factors giving it vitality in the simple days of its genesis take on added significance in this modern era of development. Simply stated, there are now more

---

[8]For instance, it is conceivable the noise created by airport traffic may cause no actionable interference with land immediately adjoining the end of the runway—because that land is used for a noisy industrial use, while the same air traffic may be causing substantial interference giving rise to liability to a single family residence miles away. Similarly, compare vacant lots zoned agricultural as opposed to those zoned residential. Contrast a home built in the heart of a residential area with one built next to the railroad tracks.

characteristics and criteria by which each piece of land differs from every other.

We decline to alter this rule of substantive law to make class actions more available. ■■■ Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going.[9]

Moreover, even were we to allow a subclassification process here, the factors giving the uniqueness rule vitality would serve to break down the alleged beneficial aspects which such a process might yield under these facts, making a class action here unmanageable. Given the many recognized factors combining to make up the uniqueness of each parcel of land, the number of subclassifications into which the class would be required to be divided to yield any *meaningful* result would be substantial. Then, because liability is here predicated on variables like the degree of noise, vapor, and vibration, the problem is compounded by the factors of distance and direction affecting these variables. The result becomes a statistical permutation, and the requisite number of subclassifications quickly approaches the total number of parcels in the class. Under such circumstances, there is little or no benefit in maintaining the action as a class.

Conversely, these uniqueness factors weigh heavily in favor of requiring independent litigation of the liability to each parcel and its owner. Because liability here is predicated on the impact of certain activities on a particular piece of land, the factors determinative of the close issue of liability are the specific characteristics of that parcel. The grouping and treating of a number of different parcels together, however, necessarily diminishes the ability to evaluate the merits of each parcel. The superficial adjudications which class treatment here would entail could deprive either the defendant or the members of the class—or both—of a fair trial. Reason and the constitutional mandates of due process compel us to deny sanction to such a proceeding.

---

[9]The federal law on class actions is in accord. Rule 23 was not intended to make a change in the substantive law (see rule 82, Fed. Rules Civ. Proc.; *Zahn* v. *International Paper Co.* (1973) 414 U.S. 291 [38 L.Ed.2d 511, 94 S.Ct. 505]; *Snyder* v. *Harris* (1969) 394 U.S. 332 [22 L.Ed.2d 319, 89 S.Ct. 1053]); and the federal courts have been criticized where they have made such changes. (See Simon, *Class Actions—Useful Tool or Engine of Destruction* (1971) 7 Lincoln L.Rev. 20, 22, 25, 27-31.)

The proposed classification system failing,[10] the proposed class fails. It is true some questions common to the members of the class remain. But the class judgment rendered on these facts would not determine issues of sufficient number or substantiality to warrant class treatment.[11] Most notably, the class judgment would fail to establish the basic issue of defendant's liability to the purported class. While we have held in several cases the failure of the class judgment to establish individual damage would not be fatal, in each the class judgment to be rendered would have established the basic issue of liability to the class. (See *Collins* v. *Rocha, supra,* 7 Cal.3d 232; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695.) Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability. There is nothing to indicate the instant action presents such an extraordinary situation.

## INADEQUACY OF REPRESENTATION

 We also conclude the trial court abused its discretion in certifying this class action for the reason the plaintiffs fail to adequately represent the members of the class.

 To maintain a class action, the representative plaintiff must adequately represent and protect the interests of other members of the class. (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871-872 [97 Cal.Rptr. 849, 489 P.2d 1113].) This requirement is a natural consequence of the equitable origins of the action and is the product in part of the relation between the res judicata effect of the class judgment on absent members and the requirements of due process.[12] (*Hansberry* v. *Lee* (1940) 311 U.S. 32 [85 L.Ed. 22, 61 S.Ct. 115, 132 A.L.R. 741]; *Carroll* v. *American Federation of Musicians of U.S. & Can.* (2d Cir. 1967) 372 F.2d 155, 162.)

---

[10]Our decision here is consistent with *Vasquez* v. *Superior Court, supra,* where we pointed out the possibility of dividing a class into subclassifications. (4 Cal.3d 800, 821.) This decision serves to make explicit what was there implicit—that there are limits outside of which the subclassification system ceases to perform a sufficiently useful function to justify the maintenance of the class action. The instant situation represents merely an example of facts falling outside these limits.

[11]The federal cases are in accord in similarly disallowing class actions for airport nuisance and "inverse condemnation." (See *Virginians for Dulles* v. *Volpe* (E.D.Va. 1972) 344 F.Supp. 573, 575; *Town of East Haven* v. *Eastern Airlines, Inc.* (D.Conn. 1971) 331 F.Supp. 16, 18.)

[12]Similarly, federal law will not allow a class to be maintained except by a "representative" party. This party must fairly and adequately protect the interests of the class. (Rule 23(a), Fed. Rules Civ. Proc.)

■ The plaintiffs here inadequately represent the alleged class because they fail to raise claims reasonably expected to be raised by the members of the class and thus pursue a course which, even should the litigation be resolved in favor of the class, would deprive class members of many elements of damage.

■ Damages recoverable in a successful nuisance action for injuries to real property include not only diminution in market value but also damages for annoyance, inconvenience, and discomfort (*Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265 [288 P.2d 507]); actual injuries to the land (*Spaulding* v. *Cameron* (1952) 38 Cal.2d 265 [239 P.2d 625]); and costs of minimizing future damages. (*Barnes* v. *Berendes* (1903) 139 Cal. 32 [69 P. 491, 72 P. 406].) The plaintiffs, however, seek only recovery for diminution in *market value*.

■ It is clear under California law a party cannot, as a general rule, split a single cause of action[13] because the first judgment bars recovery in a second suit on the same cause. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleadings, § 32, pp. 1715-1716.) ■ As a result, by seeking damages only for diminution in market value, plaintiffs would effectually be waiving, on behalf of the hundreds of class members, any possible recovery of potentially substantial damages—present or future. This they may not do.

■ This court has long been concerned with requiring the representative party to protect the interests of the absent class members, even imposing a fiduciary duty to do so on the representative class member. (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 871.) To fulfill this fiduciary duty the representative plaintiff must raise those claims "reasonably expected to be raised by the members of the class." (See, *Technograph Printed Circuits, Ltd.* v. *Methode Electronics* (N.D.Ill. 1968) 285 F.Supp. 714, 721.) Clearly, under the facts alleged here the members of the class would reasonably be expected to seek recovery of damages beyond mere diminution in market values. ■ Thus, by certifying this class, the trial court sanctioned a clear violation of plaintiffs' fiduciary duty.[14]

---

[13]While there are exceptions to this general rule, none would serve to protect a member of the class here whose interests are not adequately represented. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleadings, § 32, p. 1717.)

[14]While it is clear the class action cannot proceed under its present status, ordinarily the representative plaintiff would be afforded the opportunity to cure inadequate representation by amending the complaint. (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 872.) Here, however, because amendment could not cure the failure of sufficient community of interest, affording such opportunity would serve no useful function.

CONCLUSION

Because we conclude there is insufficient community of interest here to sustain a class suit, and because plaintiffs, in violation of a fiduciary duty, would fail to adequately represent the members of the alleged class, we conclude the trial court's certification of this purported class constitutes a substantial abuse of discretion, for which mandamus lies as a remedy. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 805-806, 825; *Chance* v. *Superior Court, supra,* 58 Cal.2d 275, 278; *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].)

The writ of mandamus is granted. The trial court is ordered to vacate its order certifying the class and to enter an order dismissing the class action portion of the above-entitled matter. The alternative writ of prohibition is discharged.

Wright, C. J., McComb, J., and Burke, J., concurred.

**TOBRINER, J.**—I dissent.

The issue before us is whether the trial court abused its discretion in certifying this case as a class action. The majority, however, give no deference to that court's exercise of its discretion. In a one-sided presentation, the majority opinion notes the individual issues which divide the proposed class, but pays little heed to the more significant common issues of law and fact which unite the class; observes the burden of class litigation but overlooks the far greater burden of individual suits; claims to protect the rights of class members to claim damages, but takes from them the most effective means of enforcing that right. The trial judge carefully weighed the benefits and burdens of a class proceeding, and concluded that maintenance of this suit as a class action would yield a substantial saving of time and expense; the majority lean on the scales.

"[T]he determination of the question whether a class action is appropriate will depend upon whether the common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits." (*Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 810 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; see *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225].) In the instant case, the underlying legal controversies respecting the liability of an airport for diminution of the market value of adjoining property, the defense of governmental immunity, and the matter of compliance with the claims

statute present issues of law common to each member of the class. Common issues of fact include the expansion of airport operations, the schedule of arriving and departing aircraft, and the pattern and intensity of noise and vibrations emanating from the planes.

The diverse issues stressed in the majority opinion relate to the proof of damages,[1] and arise only because of the variety of land use within the flight pattern of the San Jose Municipal Airport. Since the impact of noise and vibration upon property values may depend upon the use and location of the property, the determination of damage to a single family residence may have little in common with proof of damage to a parking lot two miles away. Yet within a subclass of single family homes, common issues may predominate over diverse issues; an appraiser, for example, might find it possible to use the same tools of analysis and record of comparable sales to appraise the market value of all residences in a neighborhood. Thus the presence of the diverse issues cited in the majority opinion need not operate to deprive the parties and the courts of the benefits of class litigation.

As we suggested in *Vasquez v. Superior Court, supra,* 4 Cal.3d at page 821, and as plaintiffs have proposed here, the class could be divided into subclasses for purpose of trial. Perhaps the trial court could devise a procedure under which a joint trial on the common issues of law and fact would be followed by individual or subclass hearings on diverse issues. In *Vasquez* we enjoined the trial courts to "adopt innovative procedures which will be fair to the litigants and expedient in serving the judicial process" (4 Cal.3d at p. 821); we should not hastily assume that the trial court's creativity will be unequal to that task in the instant case.

Rejecting the subclassification proposed by plaintiffs, the majority bar maintenance of this suit as a class action on three grounds: (1) that plaintiffs do not properly represent the members of the class; (2) that subclassification offends against the principle that each parcel of land is unique; and

---

[1] The majority stress the argument that the diverse and individual issues in the present case bear upon the question of liability as well as damages. In fact, all diverse issues here pertain only to the proof of the existence and amount of damages. Plaintiffs, however, assert counts for nuisance and inverse condemnation; in both counts the existence of some damage is an essential element of the cause of action. Thus in a technical sense the diverse issues in the present case go to the question of liability —in that damage itself is an essential element of liability—but this factor does not prove that diverse issues here predominate over common issues. It demonstrates, instead, that the distinction between issues of liability and issues of damages is not a useful tool for determining the desirability of a class action in cases in which damage is not an independent controversy but an element of the cause of action.

(3) that an unmanageable number of subclasses would be required. Each of these grounds lacks merit.

In order to eliminate issues which affect only a portion of the class, plaintiffs limited their prayer for damages to the diminution in market value caused by the flights, and declined to seek additional damages for annoyance, inconvenience, or actual physical injury. The majority maintain that plaintiffs' failure to claim damages for such harm constitutes a breach of the fiduciary duty owing by plaintiffs to the class they represent.

This court gave short shrift to a similar contention in *Chance* v. *Superior Court* (1962) 58 Cal.2d 275 [23 Cal.Rptr. 761, 373 P.2d 849]. In the present case, as in *Chance,* "all of the members of the instant class are ascertainable . . ., and it is assumed that they will be given notice of the pending class . . . action by registered mail or other like reliable method . . ., thereby being afforded an opportunity to decide whether to appear and argue for any and all appropriate or available forms of redress desirable from their individual points of view . . . ." (58 Cal.2d at p. 290.) Thus the continued maintenance of this suit as a class action will permit the class members to choose between asserting their individual damage claims upon whatever theory they select and taking advantage of the economy and convenience of class representation.

Under these circumstances, the assertion that the plaintiffs are not properly representing the class, especially when presented by the defendant, strikes a hypocritical note. The majority opinion speaks of protecting the right of class members to damages, but destroys what may be the only efficient means of redress. The cost and inconvenience of individual litigation may very well dissuade many members of the class from instituting individual suits, and the result of the present decision will then be that such members will recover no damages for loss of market value nor for any other harm.

The majority's assertion that subclassification in the present case is incompatible with the maxim that each parcel of land is unique is both historically and logically unsound. This venerable maxim, which for centuries has served the useful but limited purpose of permitting equitable suits for specific performance of land sale contracts, has nothing to do with class actions. Uniqueness means only that each parcel of land differs in some particular from every other parcel, just as each person differs in some way from every other person. A valid classification, or subclassification, however, does not require that all members of the class possess identical characteristics; it requires only the existence of "issues common

to the class as a whole sufficient in importance so that their adjudication on a class basis will benefit both the litigants and the court." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 811.) The unique character of each parcel of land would not, in itself, prevent a court from concluding that the common issues of fact and law concerning all parcels justified the proposed subclassification.

Indeed, this court and others have often entertained actions brought on behalf of a class composed of the owners of interests in real property. (See, e.g., *Chance* v. *Superior Court, supra,* 58 Cal.2d 275 (action to foreclose trust deeds); *Bauman* v. *Islay Investments* (1973) 30 Cal.App.3d 752 [106 Cal.Rptr. 889] (tenants' action to construe lease); *Foster* v. *City of Detroit, Michigan* (6th Cir. 1968) 405 F.2d 138 (inverse condemnation); *Biechele* v. *Norfolk & Western Railway Co.* (N.D.Ohio 1969) 309 F.Supp. 354 [7 A.L.R.Fed. 894] (nuisance).) The unique character of land did not destroy the classification in those cases; I perceive no reason why the maxim should carry greater weight in the present case.

Finally, the majority assert that since the liability to each landowner will depend upon the use of each parcel, and such variables as noise, vapor, and vibration, compounded by factors of distance and direction, the number of subclassifications required approaches a statistical permutation of these elements. The reasoning is statistically erroneous, since it assumes that each element listed is independent of every other element. If, as seems more likely, the degree of noise, vapor, and vibration each vary directly with distance from the flight path, then these elements are not independent factors and do not require separate classification. (Cf. *People* v. *Collins* (1968) 68 Cal.2d 319, 328-329 [66 Cal.Rptr. 497, 438 P.2d 33, 36 A.L.R. 3d 1176].) The majority's reasoning is also legally meritless, for it assumes that each diverse issue compels the creation of a separate subclass, an assumption which conflicts with the principle that class litigation requires only that common issues predominate over diverse issues.[2]

What the majority opinion overlooks are the manifest benefits arising from the use of a class action to resolve the controversy concerning noise and vibration damage to property in the vicinity of the San Jose Municipal Airport. There are 733 parcels within the area described by plaintiffs' com-

---

[2]The majority's assertion that a great many subclasses would be required is pure supposition. The record before us does not indicate how many subclasses will be necessary, and the trial court has rendered no finding on that subject. If later in this litigation the trial court discovers that the number of subclasses is so large that management of the class action is unfeasible, it can then decertify this suit as a class action. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 821.)

plaint. Seven hundred thirty-three separate trials, or even half that number, would overwhelm the courts. The mere filing of a single complaint and answer, in place of several hundred complaints and answers, represents a substantial saving of time and effort. The court could determine the question of compliance with the claims statute on the basis of a single class claim in place of numerous individual claims. Extensive—and expensive—expert testimony on noise and vibration patterns need be presented once, difficult legal issues of liability and governmental immunity need be resolved but once. Within each subclass, appraisers could assess damages to related properties without need for individual trials.

I conclude that neither the grounds stated in the majority opinion, nor the diverse issues here present, preclude the maintenance of this suit as a class action. The substantial saving in judicial time and litigation expense which would result from use of the class action format fully justify the trial court's exercise of its discretion.

Mosk, J. and Taylor, J.* concurred.

The petitions of the real parties for a rehearing were denied October 2, 1974. Sullivan, J., did not participate therein. Tobriner, J., and Mosk, J., were of the opinion that the petitions should be granted.

---

*Assigned by the Chairman of the Judicial Council.