Shirley **NEWMAN** and Anthony Butler, Plaintiffs,

v.

**SAN JOAQUIN DELTA COMMUNITY COLLEGE DISTRICT; Daniele Ruley; James Wood; and Does 1 through 100, inclusive, Defendants.**

**No. CIV. 2:09–3441 WBS KJN.**

United States District Court, E.D. California.

Aug. 31, 2011.

---

Kenneth N. Meleyco, Law Offices of Kenneth N. Meleyco, Stockton, CA, Stephen M. Ryals, PHV, Ryals and Breed PC, Saint Louis, MO, for Plaintiff.

James Thomas Anwyl, Anwyl Scoffield & Stepp, LLP, Rancho Cordova, CA, J. Anthony Abbott, Mayall Hurley Knutsen Smith & Green, Stockton, CA, James B. Carr, Mastagni Holstedt Amick Miller & Johnsen, Sacramento, CA, for Defendant.

*MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT, SUMMARY ADJUDICATION, OR PARTIAL SUMMARY JUDGMENT AND MOTION IN LIMINE*

WILLIAM B. SHUBB, District Judge.

Plaintiffs Shirley Newman and Anthony Butler brought this action against defendants San Joaquin Delta Community Col-

lege District ("Delta College"), Daniele Ruley, and James Wood, asserting claims for excessive force, unreasonable seizure, and disability discrimination under federal and state law. Presently before the court are Delta College and Ruley's joint motion for summary judgment or partial summary judgment pursuant to Federal Rule of Civil Procedure 56, Wood's motion for summary judgment or summary adjudication pursuant to Rule 56, and plaintiffs' motion in limine.

## I. Factual and Procedural Background

On March 13, 2008, plaintiffs, who have lived together since 2000, were attending classes in separate classrooms at Delta College when Newman began to suffer from anxiety. Newman, a 43–year–old woman with a history of mental illness, sought out Butler to comfort her.[1] An instructor in Butler's classroom called campus police when Newman stated at one point that she was going to hurt someone. (*See* Meleyco Decl. Ex. J (classroom instructor deposition transcript), at 11–22, Ex. U (police dispatcher deposition transcript), at 21–23.) The dispatcher told the police officers that the wife was upset and crying and on the "verge of being violent towards her husband." (Medina Decl. Ex. 20, at Ex. 2.)

According to plaintiffs, they were walking quietly and calmly to the classroom door as they held each other when the individual defendants arrived. (*See* Meleyco Decl. Ex. E (Butler deposition transcripts), at Feb. 27, 2009, dep. tr. 91–92, Ex. J, at 23–24.) Butler complied with Delta College police officer Wood's orders to come with him, but was slammed to the ground and dragged into the hallway by

Woods and Delta College police officer Ruley. Newman states that Ruley then pulled her through the classroom door and slammed her against the hallway wall three times, while using racially derogatory language. Plaintiffs were released after five to ten minutes. (*See id.* Ex. E, at Feb. 27, 2009, dep. tr. 94–104, Apr. 5, 2011, dep. tr. 196–210, 223, 250, Aug. 12, 2009, dep. tr. 94–101; *id.* Ex. R (Newman deposition transcripts), at Apr. 12, 2009, dep. tr. 191–200, 244–57, Apr. 20, 2009, dep. tr. 384–386; Butler Decl. in Opp'n to Delta College & Ruley's Mot. ("Butler Decl. I") ¶¶ 16, 23–25, Exs. E–F (Online Citizen Complaint Forms); Newman Decl. in Opp'n to Delta College & Ruley's Mot. ("Newman Decl. I") ¶¶ 4–8, 19, 32–38, Exs. E–F (Online Citizen Complaint Forms); Butler Decl. in Opp'n to Wood's Mot. ("Butler Decl. II") ¶¶ 6–10; Newman Decl. in Opp'n to Wood's Mot. ("Newman Decl. II") ¶¶ 6–17; *see also* Meleyco Decl. Ex. BB (deposition transcript of witness to incident), at 11–12; *id.* Ex. B (deposition transcript of witness to incident), at 14–33, 52–55.)

According to defendants, plaintiffs were disturbing the other students and Butler failed to comply with Wood's orders and appeared to be dragging Newman to the classroom door as she pushed away from him. Newman, screaming and crying, then tried to get to Butler while Wood was questioning him in the hallway.

On March 14, 2008, after meeting with Newman, a vice president at Delta College temporarily suspended her for student misconduct. The vice president required Newman to submit documentation that supported her claim that she was receiving mental help. (*See* Michel Decl. ¶¶ 4–5, Ex.

---

1. Before this incident, San Joaquin In Home Support Services had granted Newman twenty-four-hour "protective supervision" by Butler. Butler states that he enrolled in classes to be near Newman when Delta College would not allow him to sit inside or outside Newman's classrooms. (Butler Decl. in Opp'n to Delta College & Ruley's Mot. ("Butler Decl. I") ¶ 4.)

A–B.) Newman did not submit sufficient documentation and was notified on March 17, 2008, that she was suspended through the summer 2008 semester. Following numerous appeals, the president of Delta College rescinded the suspension later that summer.

Delta College's Disabled Students Program and Services ("DSPS") office now permits Newman to have Butler attend classes with her. The DSPS office had previously accommodated Newman with extended test-taking time and allowed her to use the elevators.

Defendants removed the case to this court on December 11, 2009. Plaintiffs assert a 42 U.S.C. § 1983 claim for excessive force and unreasonable seizure as well as state law claims for battery, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress against all defendants. Newman also asserts claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12183, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, California's Unruh Civil Rights Act ("Unruh Act"), *see* Cal. Civil Code § 51, California's Disabled Persons Act ("DPA"), *see id.* § 54.1, and California Government Code section 11135 against Delta College. *See* Cal. Gov't Code § 11135.

## II. *Discussion*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment ...."[2] *Id.*

---

**2.** Plaintiffs request judicial notice, *see* Fed. R.Evid. 201, of eleven documents. (Pls.' Req. for Judicial Notice Exs. A–K.) The court declines to take judicial notice of these docu-

## A. *Evidentiary Objections*

Pursuant to Federal Rule of Civil Procedure 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a *form that would be admissible in evidence.*" Fed. R.Civ.P. 56(c)(2) (emphasis added).

The parties have filed numerous evidentiary objections, many of which are particularly improper on summary judgment. *See Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1119–20 (E.D.Cal.2006) (Shubb, J.). Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. All of these objections are overruled as moot.

Delta College and Ruley object to many of the exhibits attached to plaintiffs' counsel's declaration: (1) deposition transcripts and exhibits, (2) expert reports and CVs, and (3) documents produced by Delta College, such as (a) e-mails among Delta College police officers after the incident, (b) the internal affairs investigation report and related documents, and (c) documents pertaining to the tasering of a mentally ill student. (*See* Delta College & Ruley's Objections to Meleyco Decl.) The court overrules the objections to these exhibits because plaintiffs may be able to present this evidence at trial in a form that would be admissible. *See* Fed.R.Civ.P. 56(c)(2). The court also overrules Delta College and Ruley's objections to statements in plaintiffs' counsel's declaration.

The court overrules Delta College and Ruley's objections contained within their response to plaintiffs' statement of undisputed facts. (*See* Delta College & Ruley's Objections to Pls.' Evidence in Supp. of their Opp'n to Defs.' Mot. for Summ. J. or Partial Summ. J.)

The court overrules plaintiffs' objections to Wood's declaration, (*see* Pls.' Opp'n to Wood Decl. Submitted in Supp. of Wood's Mot. for Summ. J./Adjudication), and plaintiffs' objections contained within their response to Wood's statement of undisputed facts, (*see* Pls.' Statement of Disputed & Undisputed Material Facts in Opp'n to Wood's Mot. for Summ. J. or Partial Summ. J.), except for 11, which objects on the ground that the diagnosis of Newman in the cited evidence was not made by a qualified expert. The court sustains this objection. The court overrules plaintiffs' objections contained in their response to Delta College and Ruley's statement of undisputed facts, (Pls.' Statement of Disputed & Undisputed Material Facts in Opp'n to Delta College & Ruley's Mot. for Summ. J. or Partial Summ. J.), except for 25. The court sustains objection 25 to the transcript of the classroom instructor's call to police. The parties dispute its authenticity.

## B. *Plaintiffs' § 1983 Claim*

In relevant part, § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

ments because judicial notice is not necessary to resolve the motions.

Wood requests judicial notice of four documents, only three of which he attached to the request. (Wood's Req. for Judicial Notice Exs. 1, 3–4.) The court declines to judicially notice the decision from the California De-

partment of Health Services because it is not necessary to the resolution of the motions. The court denies the request to judicially notice the publications from the California Commission on Peace Officer Standards and Training ("POST") because they are incomplete copies of the publications.

be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights. 42 U.S.C. § 1983; *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

### 1. *Individual Defendants*

#### a. *Excessive Force*

Under the Fourth Amendment, police may use only such force during an arrest as is objectively reasonable under the circumstances, as judged by a reasonable officer at the scene. *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865. Excessive force claims require "balanc[ing] the amount of force applied against the need for that force." *Bryan v. MacPherson,* 630 F.3d 805, 823–24 (9th Cir.2010) (quoting *Meredith v. Erath,* 342 F.3d 1057, 1061 (9th Cir.2003)) (internal quotation marks omitted). Summary judgment should be granted sparingly on excessive force claims. *See Gregory v. Cnty. of Maui,* 523 F.3d 1103, 1106 (9th Cir.2008).

■ In considering the need for the force, the court considers three non-exclusive factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bryan,* 630 F.3d at 826 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. 1865) (internal quotation marks omitted). The safety factor is the most important factor. *Id.*

■ Here, on March, 13, 2008, when Newman began suffering from anxiety, she sought out Butler, who was in a classroom down the hall. Butler attempted to comfort Newman. The classroom instructor then brought them into a side office. In the office, Newman rummaged through the items on the desk and stated that she was going to hurt someone. The classroom instructor then called Delta College police.

Wood and Ruley received a call about a husband and wife disturbing the peace. The dispatcher said the wife was upset and crying and on the "verge of being violent towards her husband." (Medina Decl. Ex. 20, at Ex. 2.)

According to plaintiffs, plaintiffs then walked calmly and quietly through the classroom as other students were working, stopping briefly to grab Butler's backpack. Butler was holding Newman in a "hugging position"; Newman was crying quietly and clinging to Butler's shirt.

Before plaintiffs were able to exit the classroom, the individual defendants arrived on the scene. Newman then got behind Butler, still in physical contact with him. Butler requested some space from the individual defendants. Wood ordered Butler to come with him. Butler stated, "Okay. But my wife is very, very ill. We have to kind of go slow," (Meleyco Ex. E, at Feb. 27, 2009, dep. tr. 94:19–20), and then took a step toward Wood. Wood then repeated his order in a more commanding tone and grabbed Butler's arm. Wood then "[s]lammed," (*id.* Ex. E, at Apr. 5, 2011, dep. tr. 205:19), Butler to the ground with the assistance of Ruley, who pulled Butler's shirt over his head. Ruley also pushed Newman away from Butler as Newman tried to hold on to him. The individual defendants then dragged Butler, who was lying face-down, approximately seven feet through the classroom door and down the hallway, at which point Wood stood Butler upright.

Ruley then returned to the classroom to find Newman, who had remained in the same spot. Ruley grabbed Newman's arm

or wrist and forcefully pulled her through the classroom door, allegedly injuring Newman's shoulder. Ruley then continued to pull Newman down the hallway, in the opposite direction of Wood and Butler. Grabbing Newman at the shoulders, Ruley slammed Newman against the hallway wall three times, allegedly causing injury to her lower back that later required surgery.[3] Ruley told Newman multiple times to "[s]hut your black ass up," (*id.* Ex. R, Apr. 12, 2011, dep. tr. 196:17–18), and called her a "[b]itch." (*Id.* Ex. B, at 23:24.) Newman claims that she never attempted to get away from or resist Ruley.

Butler explained to Wood that his wife was mentally ill and what had happened. A professor and a student who knew Newman attempted to explain Newman's circumstances to Ruley. (*See* Meleyco Decl. Exs. O, B.) Plaintiffs were detained for five to ten minutes before being released.[4]

■ Under plaintiffs' version of the facts, the government interest in the use of force was minimal. *See Bryan,* 630 F.3d at 826. The only possibly applicable crimes were the misdemeanors of failing to comply with an order, resisting arrest, disturbing the peace, or battery. "While 'the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others.' " *Id.* at 828–29 (quoting *Headwaters Forest Def. v. Cnty. of Humboldt,* 240 F.3d 1185, 1204 (9th Cir.2000), *vacated and remanded on other grounds sub nom. Cnty. of Humboldt v. Headwaters Forest Def.,* 534 U.S. 801, 122 S.Ct. 24, 151 L.Ed.2d 1 (2001)). Plaintiffs' evidence suggests that they did not pose a threat to the officers and did not resist or attempt to flee before or after the individual defendants began to use force. Moreover, if the individual defendants knew that Newman was "acting out" from a mental illness, the Ninth Circuit has indicated that less intrusive means may be more appropriate.[5] *See id.* at 829, 122 S.Ct. 24 (discussing use of intermediate force).

While the force used was not deadly or intermediate, it involved slamming Butler to the ground and dragging him and pulling Newman and slamming her against the wall three times. Under plaintiffs' version of the events, there is a genuine dispute regarding the reasonableness of the force under the balancing test set forth in *Graham.*

Section 1983 requires "personal participation." *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir.2002). While Wood did not touch Newman, Wood initiated the use of

---

3. Following the surgery, Newman has had difficulty walking and generally uses a wheelchair. She also has had difficulty controlling her bowel and bladder functions and has had numbness in her genital area.

4. Defendants' version of the events differ. It appeared that Newman was pushing away from Butler as Butler dragged her toward the exit. She also was screaming and crying when she went behind Butler when the officers arrived. When Wood was questioning Butler in the hallway, Newman was trying to get to Butler.

The parties' facts overlap in some respects. It appears undisputed that Butler was still holding Newman when Wood first pulled his arm. It also appears undisputed that *after* Ruley pulled Newman into the hallway, Newman was crying and screaming for Butler.

5. The individual defendants may have known that Newman was mentally ill from how Newman was acting. Moreover, Newman was wearing a "medic-alert" bracelet and Butler informed the individual defendants that his wife was ill. Plaintiffs have also presented evidence suggesting that Ruley may have learned about Newman's mental illness before March 13, 2008, when she responded to a call involving Newman.

force against Butler and a jury could reasonably infer that he participated in the subsequent use of force against Newman. Accordingly, the court will deny the individual defendants' motions for summary judgment on the § 1983 claim for excessive force.

### b. *Unreasonable Seizure*

An investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), only requires reasonable suspicion; an arrest requires probable cause. *See Washington v. Lambert*, 98 F.3d 1181, 1185–86 (9th Cir.1996).

To determine whether a seizure was a *Terry* stop or an arrest, the "general consideration" is that a *Terry* stop is brief and of a minimally intrusive nature. *United States v. Guzman–Padilla*, 573 F.3d 865, 884 (9th Cir.2009). Beyond this general consideration, the courts usually use two inquiries to determine whether a seizure was a *Terry* stop or arrest. *Id.* "First, it is well-established that intrusive measures may convert a stop into an arrest if the measures would cause a reasonable person to feel that he or she will not be free to leave after brief questioning—i.e., that indefinite custodial detention is inevitable." *Id.* "Second, because '[t]he purpose of a Terry stop is to allow the officer to pursue his investigation without fear of violence,' 'we allow intrusive and aggressive police conduct without deeming it an arrest ... when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.'" *Id.* (quoting *United States v. Taylor*, 716 F.2d 701, 708 (9th Cir.1983), and *United States v. Miles*, 247 F.3d 1009, 1012–13 (9th Cir. 2001)) (alterations in original) (citation omitted).

Here, a trier of fact could find that the *Terry* stop transformed into an arrest. As the facts are shown by plaintiffs, nothing had occurred that would make the officers fear for their safety, justifying aggressive conduct. *See Guzman–Padilla*, 573 F.3d at 883; *see, e.g., United States v. Ricardo D.*, 912 F.2d 337, 340 (9th Cir. 1990).

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007).

Under plaintiffs' version of the events, the only fact supporting probable cause would have been the information the individual defendants received from the student dispatcher. However, once they arrived on the scene, the individual defendants would have seen that plaintiffs were calmly and quietly walking toward the classroom exit. According to plaintiffs, Butler complied with Wood's orders. There is a genuine dispute with respect to whether probable cause existed to arrest either plaintiff for any crime. Accordingly, the court will deny the individual defendants' motions for summary judgment on the unreasonable seizure claim.

### c. *Qualified Immunity*

A court may not determine qualified immunity at the summary judgment stage when there is a factual dispute as to "the facts and circumstances within an officer's knowledge" or "what the officer and claimant did or failed to do." *Upl/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993); *see Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir.2003); *see, e.g., Castillo v. City of Oakland*, No. C 09–4679, 2010 WL 4316176, at *3 (N.D.Cal. Oct. 26, 2010); *Begzad v. City of Hayward*, No. C03–2163, 2005 WL 350961, *7 (N.D.Cal. Feb. 14, 2005). Here, there are multiple factual disputes regarding what the individual defendants and plaintiffs did or

failed to do and what the individual defendants knew, thus precluding the court from determining the issue of qualified immunity.

### 2. *Monell* Claim

■■■■ "In a *Monell* claim, there are three ways to show a policy or custom of a [public entity]: (1) by showing 'a long-standing practice or custom which constitutes the 'standard operating procedure' of the local government entity'; (2) 'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision'; or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.' " *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1155 (9th Cir.2007). A policy is a deliberate choice made by the entity and can be one of action or inaction. *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006).

While not exactly clear from their opposition, plaintiffs appear to base their *Monell* claim on Delta College's police policy or custom regarding handling mentally ill people, including the use of force. Plaintiffs appear to only rely on a failure-to-train theory under *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), and ratification.

■■■■ "To impose liability ... under *Canton*, a plaintiff must show: (1) that [defendant's] employee violated [the plaintiff]'s rights; (2) that the [defendant] has customs or policies that amount to deliberate indifference (as that phrase is defined by *Canton*); and (3) that these policies were the moving force behind the employee's violation of [the plaintiff]'s constitutional rights, in the sense that the [the defendant] could have prevented the violation with an appropriate policy." *Gibson*

*v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1194 (9th Cir.2002).

■■■■ The deliberate indifference standard is met when "the need for more or different training is *so obvious*, and the inadequacy *so likely* to result in the violation of constitutional rights, that the policymakers of the [entity] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390, 109 S.Ct. 1197 (emphases added). "A plaintiff [ ] might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.' " *Long*, 442 F.3d at 1186 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

■■■■ Here, one of plaintiffs' police experts, Joseph McNamara, makes the general observation about how frequently police officers encounter mentally ill people and opines that police officers should be trained on how to handle them. (Meleyco Decl. Ex. UU (McNamara expert report)). Plaintiffs point to the fact that the Marc Bromme, who was chief of police at the time of the incident, acknowledged that the approach used to deal with mentally healthy people may not be effective with mentally ill people. (*Id.* Ex. D (Bromme deposition transcript), at 142:12–18.) Plaintiffs' expert McNamara states, for example, that touching a mentally ill person may cause the person to erupt, while having the opposite effect on a mentally healthy person. (*Id.* Ex. UU.)

Plaintiffs point out that Delta College did not require continuing education training of police officers or have a policy in its police manual *specifically* addressing mentally ill people before this incident and still does not. (*Id.* Exs. D (Bromme deposition

transcript), at 47:13–20, DD (Zwickey deposition transcript, at 116:2–9).) The California Commission on Peace Officer Standards and Training requires twenty-hours of continuing education training, with some of these hours discretionary on what topics a police department may cover. (*Id.* Ex. P (McNamara deposition transcript), at July 18, 2011, dep. tr. 159:17–160:10. McNamara recommends forty hours beyond the required twenty-four hours of continuing education be devoted to handling mentally ill people. (*Id.*)

In support of their failure-to-train theory, plaintiffs also point to four categories of post-incident evidence. *See Henry v. Cnty. of Shasta*, 132 F.3d 512, 519 (9th Cir.1997), *amended on denial of rehearing*, 132 F.3d 512 (9th Cir.1997) ("[P]ost-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry."). First, neither the police chief at the time nor the next police chief took corrective action. With respect to Newman specifically, an e-mail from the chief of police told his officers that Newman had a mental illness, but did not instruct them to handle her differently from mentally healthy people. (Meleyco Decl. Ex. GG (e-mails).) Second, a series of e-mails among Delta College officials, including police officers, suggests that they pre-judged what had occurred. (*Id.*)

Third, the internal affairs investigation, conducted by a police officer who may have pre-judged the incident, "exonerated" the individual defendants. (*Id.* Ex. JJ (internal affairs report).) The chief of police reviewed the report and agreed with it in letters to plaintiffs. (*See* Butler Decl. II Exs. G–H. Fourth, in April of 2011, three years after the incident, Delta College police tasered a mentally ill person. (Meleyco Decl. Ex. II.)

In response to the failure-to-train theory, Delta College argues that plaintiffs have not presented evidence that contact with mentally ill people was a recurring situation. Delta College police officers, including the individual defendants, received all legislatively-mandated training, such as basic and field training. (*See* Ruley Decl. ¶¶ 2–12; Wood Decl. in Supp. of Delta College & Ruley's Mot. ¶¶ 2–9; Di Piero Decl. ¶¶ 2–10; Greenwood Decl. ¶¶ 2–10; Vasquez Decl. ¶¶ 2–8.) Basic and field training includes training on how to handle mentally ill people.

Delta College argues that plaintiffs do not have sufficient evidence of deliberate indifference, noting that plaintiffs do not cite past constitutional violations.

The court finds that plaintiffs' evidence to prove its failure-to-train theory is relatively weak and relies on general observations about the frequency with which police officers encounter mentally ill people. Moreover, plaintiffs have not argued that the basic and field training with respect to mentally ill people is insufficient as a matter of content; plaintiffs simply argue for more training and a policy in the manual. Additionally, their post-incident evidence is far from as probative as the evidence was in *Henry*.

Nonetheless, drawing all inferences in plaintiffs' favor, the court finds that the failure to have *any* continuing education training on handling mentally ill people and the failure to address the issue *at all* in the police manual creates at least triable issues with respect to whether Delta College's failure to train amounted to deliberate indifference and was the "moving force" behind the constitutional violations. *Cf. Abston v. City of Merced*, No. 1:09–cv–00511, 2011 WL 2118517, at *15 (E.D.Cal. May 24, 2011) (Wanger, J.). Plaintiffs have gone beyond presenting evidence of the failure to train one officer, which is insufficient standing alone. *See Blanken-*

horn v. City of Orange, 485 F.3d 463, 484 (9th Cir.2007). Accordingly, the court will deny Delta College's motion for summary judgment on the Monell claim.[6]

### C. Plaintiffs' Battery Claim

■ "Claims that police officers used excessive force in the course of an arrest, investigatory stop or other 'seizure' of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution." Munoz v. City of Union City, 120 Cal. App.4th 1077, 1102, 16 Cal.Rptr.3d 521 (1st Dist.2004); see also Austin B. v. Escondido Union Sch. Dist., 149 Cal.App.4th 860, 879, 57 Cal.Rptr.3d 454 (2007) (discussing joint tortfeasor liability). Accordingly, because the court will deny defendants' motions for summary judgment on the excessive force claim, the court will deny defendants' motions with respect to this claim.[7]

### D. Plaintiffs' False Imprisonment Claim

■ "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Easton v. Sutter Coast Hosp., 80 Cal.App.4th 485, 496, 95 Cal.Rptr.2d 316 (1st Dist.2000); see also Harden v. S.F. Bay Area Rapid Transit Dist., 215 Cal.App.3d 7, 15, 263 Cal.Rptr. 549 (1st Dist.1989) (discussing joint tortfeasor liability). "Pursuant to California Penal Code § 847(b)(1), a police officer shall not be held civilly liable for false arrest ... if the police officer had reasonable cause to

believe the arrest was lawful ...." Turner v. Oakland Police Officers, No. C 09–03652, 2010 WL 234898, at *5 (N.D.Cal. Jan. 14, 2010). "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." Id. For the reasons discussed with respect to the unreasonable seizure claim, the court will deny defendants' motions with respect to the false imprisonment claim.

### E. Plaintiffs' Intentional Infliction of Emotional Distress Claim

■ The elements for the tort of intentional infliction of emotional distress are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Christensen v. Super. Ct., 54 Cal.3d 868, 904, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (quoting Davidson v. City of Westminster, 32 Cal.3d 197, 209, 185 Cal. Rptr. 252, 649 P.2d 894 (1982)). An unprovoked attack by a police officer could be considered extreme and outrageous conduct. See Graves v. City of Stockton, No. Civ. 04–0430 DFL KJM, 2006 WL 768831, at *5 (E.D.Cal. Mar. 27, 2006) (Levi, J.); Lewis v. City of Portland, No. Civ. 99–1279–AS, 2000 WL 254004, at *3 (D.Or. Jan. 21, 2000). Plaintiffs have presented evidence that they suffer from emotional distress. While Butler's emotional distress seems to be significantly less than

---

**6.** Because plaintiffs have a viable Monell claim under the failure-to-train theory, the court declines to decide whether plaintiffs have grounds for Monell liability under ratification.

**7.** By statute, a public entity is vicariously liable for injuries caused by their employees within the scope of employment, unless the employee is immune from liability. See Cal. Gov't Code § 815.2. Accordingly, Delta College will be liable to the extent the individual defendants are liable for the state law torts.

Newman's, it is sufficient. *See Graves,* 2006 WL 768831, at *6. Accordingly, the court will deny defendants' motions for summary judgment on this claim.

### F. *Plaintiffs' Negligent Infliction of Emotional Distress Claim*

 Plaintiffs treat this claim as a general negligence claim. "The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care."[8] *Megargee v. Wittman,* 550 F.Supp.2d 1190, 1209 (E.D.Cal.2008) (O'Neill, J.). Under California law, police officers have a duty not to use excessive force. *Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1164 (N.D.Cal.2009). "[W]hether an officer breached such duty is 'analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution.'" *Id.* (quoting *David v. City of Fremont,* Nos. C 05–46 CW, C 05–956, 2006 WL 2168329, *21 (N.D.Cal. July 31, 2006)). For the reasons discussed above with respect to the excessive force claim, the court will deny defendants' motions for summary judgment on the negligence claim.

### G. *Newman's ADA and Rehabilitation Act Claims against Delta College*

 In the education context, "[t]o make out a prima facie case under either the ADA or Rehabilitation Act [a plaintiff] must show that (1) she is disabled under the Act; (2) she is 'otherwise qualified' to remain a student at the [ ] School, i.e., she can meet the essential eligibility requirements of the school, with or without reasonable accommodation; (3) she was dismissed solely because of her disability;

and (4) the [ ] School receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim)." *Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1045 (9th Cir.1999) (explaining 29 U.S.C. § 794 (Rehabilitation Act provision) and 42 U.S.C. § 12132 (ADA provision)).

The ADA regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7); *see also* 34 C.F.R. § 104.44(a).

 Here, Newman bases her ADA and Rehabilitation Act claims on Delta College (1) suspending Newman from attending classes following the March 13, 2008, incident, (2) "failing to conduct a proper analysis of her disability which resulted in a failure to recognize her need for a caregiver to be present in classes with her," and (3) failing to provide "regular and consistent counseling to ensure her academic progress." (Pls.' Opp'n to Delta College & Ruley's Mot. at 96:8–13.)

Newman met with someone from Delta College's DSPS office on June 29, 2007. Newman told Roger Keeney that she had psychological problems. The only documentation Keeney required was a letter from the Social Security Administration confirming that she was receiving disability benefits. (See Meleyco Decl. Ex. N (Keeney dep. trans.), at 19, 25–26, 33–34.) DSPS's guidelines allow for a student to be accompanied to class by a caregiver, but Newman was not offered this accommodation until after the incident. Newman was

---

8. Wood argues that plaintiffs' claim is barred by contributory negligence or assumption of the risk. The court finds triable issues of fact with respect to these affirmative defenses.

allowed some accommodations before the incident, such as extended test-taking time.

While it appears undisputed that Newman never specifically requested that a caretaker accompany her to class or academic counseling, there appears to be a genuine dispute as to whether Delta College engaged in good faith in the interactive process. The Ninth Circuit has explained what is required of a public entity as follows:

If [the plaintiff] is disabled, the [public entity] also had a duty to engage in an interactive process to consider his requested accommodations. As we have explained in the context of our employment cases, once the need for accommodation has been established, there is a mandatory obligation to engage in an informal interactive process *"to clarify what the individual needs and identify the appropriate accommodation."* This interactive process is triggered upon notification of the disability and the desire for accommodation. An employer who fails to engage in such an interactive process in good faith may incur liability "if a reasonable accommodation would have been possible."

*Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir.2002) (quoting *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1112, 1114, 1116 (9th Cir.2000)) (addressing 28 C.F.R. § 35.130(b)(7)) (citations omitted) (emphasis added).

Newman's theory is, had Delta College engaged in good faith in the interactive process, the incident of March, 13, 2008, may have been prevented. If the incident had been prevented, Newman would not have been suspended. The Ninth Circuit has noted the connection between the failure to accommodate and termination in the employment context. *See Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1138–39 (9th Cir.2001) ("Often the two claims, are, from a practical standpoint, the same.... In this case, MHA's stated reason for Humphrey's termination was absenteeism and tardiness. For purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination. The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability."). Thus, the genuine issue with respect to the failure to accommodate leads the court to deny Delta College's motion for summary judgment as to the ADA and Rehabilitation Act claims.[9]

## H. *Newman's California's Unruh Act and DPA Claim against Delta College*

"The DPA and the Unruh Act[10] both focus on ensuring that persons with dis-

---

**9.** While not raised by Delta College, the court notes that "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1138 (9th Cir.2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. Thus, to

recover monetary damages at trial on the ADA and Rehabilitation Act claims, Newman must prove intentional discrimination.

**10.** The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their ... disability ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

abilities have equal access to public businesses, facilities, and other accommodations." *Bass v. Cnty. of Butte,* 458 F.3d 978, 980 (9th Cir.2006); *see* Cal. Civil Code §§ 51, 54.1; *see generally Molski v. Arciero Wine Grp.,* 164 Cal.App.4th 786, 792, 79 Cal.Rptr.3d 574 (2d Dist.2008) (explaining how remedies differ under Unruh Act and DPA); *C.B. v. Sonora School Dist.,* 691 F.Supp.2d 1123, 1154 (E.D.Cal.2009) (Wanger, J.) (same).

■ Violations of the ADA generally constitute violations of the Unruh Act and DPA. *See* Cal. Civ.Code §§ 51(f), 54(c); *Bass,* 458 F.3d 978. *But see Bass,* 458 F.3d 978 (holding that the Acts do not extend to ADA employment violations).

Here, based on her opposition, it appears that Newman's Unruh Act and DPA claims are based solely on the ADA violation. Because Newman has a triable ADA claim, the court will deny the motion with respect to these state law claims.[11]

## I. California Government Code Section 11135

Remedies for violations of California Government Code section 11135, which prohibits entities receiving funding from the state from discriminating based on disability, are limited to "a civil action for equitable relief." Cal. Gov't Code § 11139.

Here, at the oral argument, Newman's counsel stated that the only equitable relief Newman seeks is an injunction requiring training of Delta College police officers. Delta College's only argument for summary judgment on this claim is that Newman will not be entitled to equitable relief under California Civil Code section 3422 (describing grounds for a permanent injunction). *See* Cal. Civil Code § 3422. However, Delta College has not demonstrated based on the evidence that Newman, who remains a student at Delta College, will not be entitled to equitable relief.

## J. California's Government Claims Act

In denying Wood's motion to dismiss in this action, this court held:

Plaintiffs' efforts substantially complied with the Government Claims Act because plaintiffs' complaints alerted Delta College to the basis of the claims against Delta College, Ruley, and Wood, and the amount of damages that plaintiffs were seeking. In plaintiffs' Online Citizen Complaint form, Newman even specifically identified Wood and Ruley and the officers who used force against her and arrested her. Under the facts as alleged, Delta College should have been aware that a monetary claim was being asserted against it and had sufficient information such that it could thorough-

---

The DPA provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... and privileges of ... places of public accommodation ... and other places to which the general public is invited ...." Cal. Civ.Code § 54.1.

11. However, to the extent the Unruh Act and DPA claims are based on violations of Title II of the ADA, Newman will have to prove intentional discrimination at trial to recover damages. *See C.B. v. Sonora Sch. Dist.,* 691 F.Supp.2d 1123, 1155 (E.D.Cal.2009) (Wanger, J.) ("[T]o the extent that the Complaint

may be construed to allege a violation of the Unruh Civil Rights Act or the Disabled Persons Act based on a violation of the ADA, because the Complaint alleges a violation of Title II of the ADA, Plaintiff must plead and prove intentional discrimination in order to state a claim for relief in the First Cause of Action."). If Newman's claims are not based on ADA violations, then whether Newman must prove intent to recover damages is based on whether the claim is brought under the DPA or Unruh Act. *See Molski v. Arciero Wine Grp.,* 164 Cal.App.4th 786, 792, 79 Cal. Rptr.3d 574 (2d Dist.2008) (explaining that Unruh Act requires intent and DPA does not).

ly investigate plaintiffs' claims. Plaintiffs accordingly have sufficiently alleged substantial compliance with the claims presentation requirements of the Government Claims Act.

*Newman v. San Joaquin Delta Cmty. College Dist.,* No. CIV. 2:09–3441, 2010 WL 3633737, at *6 (E.D.Cal. Sept. 14, 2010).

Even if the court only considers the documents received by Delta College,[12] these documents include: (1) "Unlawful Discrimination Complaint Forms," [13] (Butler Decl. II Exs. L1–L2); (2) a March 21, 2008, letter, titled "Civil Rights Violation," [14] (*id.* Ex. C); (3) a May 21, 2008, letter, titled "Civil Rights Violations, Unfair and Illegal Treatment of a Mentally and Physically Handicapped Student," [15] (*id.* Ex. K); (4) "Statement of Damages (Personal Injury or Wrongful Death)" forms,[16] (*id.* Exs. O1–O2; Newman Decl. II O1–O2); and (5) numerous letters from Newman appealing her suspension. (*See, e.g.,* Newman Decl. II Exs. D, D1.) Butler states that a vice president at Delta College refused to assist him "in trying to 'extract money from Delta College.'" (Butler Decl. II ¶ 13.)

In response to the Unlawful Discrimination Complaint Forms, a Delta College vice president wrote a letter to plaintiffs. The letter described the incident and subsequent suspension: "Ms. Newman and Mr. Butler feel their civil and human rights have been grossly violated by the police and administration of Delta College." The official concluded: "We found that the Campus Police acted appropriately given their training and procedures for similar situations." (*Id.* Ex. Q.)

Taking the documents together, which the court reasonably infers was intended, plaintiffs substantially complied or Delta College failed to notify plaintiffs of any deficiencies in the "claims as presented," thus waiving the requirement. *See City of San Jose v. Super. Ct.,* 12 Cal.3d 447, 456–57, 115 Cal.Rptr. 797, 525 P.2d 701 (1974) (discussing substantial compliance); *Wood v. Riverside Gen. Hosp.,* 25 Cal.App.4th 1113, 1118, 31 Cal.Rptr.2d 8 (4th Dist.1994) (same); *City of San Jose v. Super. Ct.,* 12 Cal.3d 447, 456–57, 115 Cal.Rptr. 797, 525 P.2d 701 (1974) (same); *Loehr v. Ventura Cnty. Cmty. Coll. Dist.,* 147 Cal.App.3d 1071, 1083, 195 Cal.Rptr. 576 (2d Dist. 1983) (same); *Alliance Fin. v. City & Cnty. of San Francisco,* 64 Cal.App.4th 635, 643, 75 Cal.Rptr.2d 341 (1st Dist.1998) (discussing waiver); *Santos v. Merritt Col-*

---

12. Delta College has not argued that the vice presidents and deans whom received these documents were the wrong people. *See* Cal. Gov't Code § 915.

13. Plaintiffs alleged discrimination based on mental disability, physical disability, and race. Butler requested "compensation for the Police Brutality." (Butler Decl. II Exs. L1–L2.)

14. This letter describes the incident and suspension and states that Delta College knew that Newman was disabled. The letter concludes: "We feel that our civil and human rights have been grossly violated by the police of Delta College and the Administration. We would like your help, guidance, and Any type of advice you have to help us. Be advised that we are not willing to turn the other cheek in regards to this incident. Whatever it takes they should be held accountable for the beat-

ings in the classroom and any difficulties as a result of." (*Id.* Ex. C.)

15. This letter describes the incident, suspension, and Newman's disability, and alleges that the individual defendants' and College's conduct was based on race and Newman's disability. The letter states that "this Complaint against SJDC and the DCPD ... is not going away or [to] be swept under the rug." The letter concludes by asking for someone to intervene on plaintiffs' behalf. (*Id.* Ex. K.)

16. Butler sought $2 million in general damages for pain, suffering, inconvenience, and emotional distress and $50 million in punitive damages; Newman sought $2 million in general damages and $50 million in punitive damages.

*lege,* No. C–07–5227, 2008 WL 4570708, at *5 (N.D.Cal. Oct. 14, 2008) (same). Accordingly, the court will deny defendants' motion for summary judgment on presentment-requirement grounds.[17]

IT IS THEREFORE ORDERED that Delta College and Ruley's motion for summary judgment or partial summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wood's motion for summary judgment or adjudication be, and the same hereby is, DENIED.

---

**17.** A remaining issue is damages and causation. The court declines to address defendants' argument that punitive damages are not justified. *See* Fed.R.Civ.P. 56(g) (If a court does not grant all relief requested by a motion for summary judgment, "it *may* enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.") (emphasis added).

The court also declines to address Wood's arguments with respect to whether Butler is entitled to loss of consortium damages and whether plaintiffs suffered actual damages and, if so, whether defendants caused them.